STANDARD ACCIDENT INSURANCE COMPANY V. WILL G. KNOX, RECEIVER OF UNITED EMPLOYERS' CASUALTY COMPANY.

No. A-309. Decided December 6, 1944.
Rehearing overruled January 31, 1945.
Second Motion for rehearing overruled November 28, 1945.
(184 S. W., 2d Series, 612.)

*Eskridge & Gross* and *Walter Gross,* all of San Antonio, for petitioner.

It was error for the Court of Civil Appeals to hold that respondent could maintain a suit on the performance bonds herein involved against the surety on such bonds for the recovery of unpaid premiums on policies of workmen compensation and public liability insurance issued to the principal maker of the bonds, in as much as said bonds were issued in favor of the Housing

Authority of the City of Austin and the persons performing work and labor and furnishing material for the erection of three housing projects and not naming any other person as obligees therein. United States Fidelity and Guarantee Co. v. Daniels, 107 S. W. (2d) 400; Standard Acci. Ins. Co. v. Blythe, 130 Texas 201, 107 S. W. (2d) 880; Employers Liability Assurance Corp. v. Trane Co., 139 Texas 388, 163 S. W. (2d) 398.

*Devereaux Henderson* and *Renne Allred, Jr.,* of Houston, for respondent.

On the question of liability for the insurance premiums. McFarland v. Rogers, 134 Me. 228, 184 Atl. 391; Crowell Lbr. Co. v. Ryan Co., 110 Neb. 225, 193 N. W. 609; Davis Co. v. Callaghan Co., (Com. App.) 298 S. W. 273.

MR. JUSTICE CRITZ delivered the opinion of the Court.

As tried in the District Court of Travis County, Texas, this is a suit by Will G. Knox, Receiver of United Employers' Casualty Company, against Standard Accident Insurance Company, to recover the amount of certain insurance premiums due by Vincent Falbo & Sons, a partnership, to United Employers' Casualty Company. Standard Accident Insurance Company is sued as surety for Falbo & Sons. Trial in the district court resulted in a judgment for Will G. Knox, Receiver. This judgment was affirmed by the Austin Court of Civil Appeals. 181 S. W. (2d) 863. Standard Accident Insurance Company brings error.

We will hereinafter refer to Will G. Knox as receiver, to Standard Accident Insurance Company as surety, and to Vincent Falbo & Sons as contractor. At this point we pause to note that the contractor has gone through bankruptcy and been discharged. This accounts for his absence as a party to this suit.

The Housing Authority of the City of Austin, Texas, in due form of law, let to the contractor three housing contracts, one for Whites, one for Mexicans, and one for Negroes. Each of such contracts was identical with the other two, in so far as any law question involved in this appeal is concerned. Each of such contracts consisted of the following instruments, denominated:

1. GENERAL CONDITIONS.
2. ADVERTISEMENT FOR BIDS.
3. INSTRUCTIONS TO BUILDERS.
4. THE DETAILED SPECIFICATIONS.
5. THE DRAWINGS.

6. CONTRACTOR'S BID AS ACCEPTED BY THE LOCAL AUTHORITIES.

7. THE MAIN CONTRACT, which recites what documents constitute the entire contract.

Paragraph 47 of the GENERAL CONDITIONS provides:

"(a) The contractor shall provide adequate workmen's compensation insurance for labor employed on the project, * * and shall provide * * employer's general liability insurance for the benefit of his employees not protected by such compensation laws."

Paragraph 47 also provides that:

"(b) The contractor shall be charged with the responsibility for similar public liability protection for all subcontract operations, * *."

In the ADVERTISEMENT FOR BIDS it is provided:

"The successful bidder shall be required to furnish satisfactory performance bond."

Section 18 of the INSTRUCTIONS TO BIDDERS provides:

"It is understood that except as otherwise specifically stated in the Contract Documents, the Contractor shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation , superintendence, temporary construction of every nature, all other services, facilities, and costs of every nature whatsoever necessary to execute and complete the entire work to be done under the Contract Document and deliver it complete in every respect."

Section 13 of the INSTRUCTIONS TO BIDDERS provides:

"(a) The successful bidder shall furnish a Performance Bond in a penal sum of at least fifty per cent (50%) of the total amount payable by the terms of the contract. Such bond shall be in the form of Bond, a copy of which is included in the Specification."

Attach to the specifications is the form of bond required. It as follows:

"PERFORMANCE BOND.

STATE OF TEXAS
COUNTY OF TRAVIS
      KNOW ALL MEN BY THESE PRESENTS: THAT we,_____
_____, OF THE CITY OF_____, County of

_____, State of Texas, as principal, and_____

Authorized under the laws of the State of Texas to act as surety on bonds for principals, are held and firmly bound unto the Housing Authority of the City of Austin, Travis County, Texas, a Corporation, acting by and through E. H. Perry, of Austin, Texas, Chairman of the Authority, and to the sub-contractors, workmen, laborers, mechanics and furnishers of materials, as their interest may appear, all of whom shall have the right to sue upon this bond in the penal sum of_____ Dollars (\$_____), lawful currency of the United States of America, for the payment of which, well and truly to be made, we do hereby bind ourselves, our heirs, executors, administrators, and successors, jointly and severally and firmly by these presents:

THE CONDITION OF THIS BOND IS SUCH THAT — WHEREAS, the above bounden _____has on the _____day of_____, 1938, entered into a contract with the Housing Authority of the City of Austin for furnishings all materials equipment, labor, supervision and other accessories necessary for the construction of certain improvements, as more particularly designated in said Agreement, Plans, and Specifications hereto attached.

NOW, THEREFORE, If the above bounden_____ shall faithfully perform said Agreement, and shall and will in all respects duly and faithfully observe and perform all and singular the covenants, conditions and agreements in and by said contract agreed and covenanted by the said_____ to be observed and performed, and according to the true intent and meaning of said Agreement and the Plans and Specifications hereto annexed, and as well during any period of extension of said contract that may be granted on the part of the Housing Authority of the City of Austin as during the original term of same, and shall promptly, well and truly pay all sub-contractors, workmen, laborers, mechanics and furnishers of materials all moneys to them owing by said_____ for sub-contracts, work, labor, and material done and furnished for the construction of such improvements for the Housing Authority of the City of Austin, and shall pay to the Housing Authority of the City of Austin all penalties provided for under the laws of this State for the violation of any provisions of law and/or of the provisions of said contract, then this obligation shall be and become null and void; otherwise to remain in full force and effect.

And Provided, that any alterations which may be made in

the terms of the Contract, or in the work to be done under it, or the giving by the Owner of any extension of time for the performance of the Contract, or any other forbearance on the part of either the Owner or the Principal to the other shall not in any way release the Principal and the Surety or Sureties, or either or any of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the Surety or Sureties of any such alteration, extension or forebearance being hereby waived.

This bond is made for the use and benefit of all persons, firms, and corporation who may furnish any materials or perform any labor for or on account of said work, buildings or improvements and they and each of them are hereby made obligees hereunder the same as if their own proper names were written herein as such, and they and each of them may sue hereon.

It is further understood and agreed that this bond is given under and by virtue of the provisions of Articles 5160 to 5164, inclusive, Texas Revised Civil Statutes of 1925, and as amended and the provisions of Chapter 45, General Laws Regular Session Forty-Third Legislature, and said Statutes and each of them are expressly made a part hereof. It is further understood and agreed that all sums due or to become due hereunder to the Housing Authority of the City of Austin shall be payable in Travis County, Texas."

The contractor, as principal, and Standard Accident Insurance Company, as surety, signed and delivered to the Housing Authority three Performance Bonds, in form above indicated, to cover the three projects respectively already indicated. United Employers' Casualty Company executed, as surety for the contractor, proper workmen's compensation and public liability insurance policies. All bonds and policies above mentioned were intended to comply with the provisions of the contracts between the Housing Authority and the contractor, which obligated the contractor to furnish the same. The contractor failed to pay the premiums due on the compensation and public liability insurance policies above mentioned, and Knox, as Receiver for United Employers' Casualty Company, brought this suit against the surety on the Performance Bonds, contending that such bonds obligated the surety thereon to pay the premiums on the compensation and public liability policies. The trial court sustained the contention of the surety, and entered judgment accordingly. The Court of Civil Appeals sustained the judgment and rulings of the trial court, and therefore affirm its judgment.

From the record we have recited it is evident that, if the surety on the Performance Bonds is to be held for the premiums on the compensation and public liability policies, some provision of the Performance Bonds, read in the light of the contracts between the contractor and the Housing Authority, must operate to fix such liability.

■ We first call attention to the fact that the Performance Bonds recite that they are given under and by virtue of Articles 5160 to 5164, R. C. S. 1925, and Chap. 45, C. L., Reg. Sess., 43rd Leg. We shall not attempt to discuss the various provisions of these statutes. It is sufficient to say that even a casual examination will demonstrate that none of them contain any provision that would render the surety on these Performance Bonds liable for the premiums on these compensation and public liability insurance policies. Finally, on this matter we wish to say that we have been cited to no statute that would render the surety on these Performance Bonds liable to one furnishing the contractor with these compensation and public liability policies for unpaid premiums thereon.

From what we have already said it is evident that if the judgments of the two lower courts in the instant case are to be sustained, it must be because the contracts between the Housing Authority and the contractor operate to give the company which furnished the contractor with compensation and public liability insurance a direct cause of action against the surety on these Performance Bonds for unpaid premiums due thereon. When we refer to the contracts between the Housing Authority and the contractor, we include the seven instruments already mentioned, and this includes the Performance Bonds.

When we come to consider the contracts, other than the Performance Bonds, between the Housing Authority and the contractor, we find that they bind the contractor to:

(a) Provide adequate workmen's compensation and employer's general liability insurance.

(b) Provide public liability insurance.

(c) Provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, temporary construction, and all other services, facilities, and costs of every nature whatsoever necessary to execute and complete the entire *work* to be done under the contract documents, and deliever it complete in every respect.

(d) Furnish Performance Bonds, in form and substance, specified in every detail. ·

The Performance Bonds provided by the contract were, as already said, prescribed by the Housing Authority, and not by the surety. These bonds, so far as pertinent here, contain the following provisions:

(a) The first paragraph recites that the principal and surety are held and firmly bound unto the Housing Authority and to the "sub-contractors, workmen, laborers, mechanics, and furnishers of materials." This paragraph then specifically provides that the persons or parties just named may sue upon the bond.

(b) The second paragraph, which states their conditions, recites that such conditions are that the contractor has entered into a contract with the Housing Authority "to furnish all materials, equipment, labor, supervision, and other accessories necessary for the construction of certain improvements, * * *."

(c) The third paragraph, or habendum clause, recites, in effect, that if the contractor shall faithfully perform his contract with the Housing Authority, and shall pay all sub-contractors, workmen, laborers, mechanics, and furnishers. of materials all moneys to them owing, then this obligation shall become null and void, etc.

(d) The fifth paragraph specifically names those for whose benefit these bonds were executed, and who are made obligees therein, and it is specifically stated that those named may sue on the bonds. The parties named for whose benefit the bonds were executed, and who may sue, are designated as those who may "furnish any materials or perform any labor."

Before proceeding further we deem it expedient to announce certain rules of law which we think bear on the questions we have to decide.

■ 1. A person not a party to a contract may sue thereon for himself if it appears that it was made for his benefit, but the presumption is that parties contract for themselves alone; and a contract will not be construed as having been made for the benefit of a third party, unless it clearly appears that such was the intention of the contracting parties. Citizens Nat'l Bank v. Texas & P. Ry. Co., 136 Texas 333, 150 S. W. (2d) 1003, and authorities there cited.

■ 2. According to the present decisions in this State, a con-

tract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract, and such contract will not be extended by implication or presumption. Aetna Casualty Co. v. Russell (Com. App.), 24 S. W. (2d) 385; Hess & Skinner Engineering Co. v. Turney, 110 Texas 148, 216 S. W. 621; Lonergan v. San Antonio Trust Co., 101 Texas 63, 104 S. W. 1061, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803.

The respondent in this case calls attention to the fact that the rule above announced, and as adhered to in this State, is out of harmony with the great weight of authority in this country. In this connection, the respondent contends that the great weight of authority outside of this State is that the rules of law which construe surety contracts strictly in favor of sureties have no application to corporate sureties which enter into contracts of suretyship for profit. We are aware of the fact that the rule of construction as contended for by respondent is supported by the weight of authority in this country. American Surety Co. v. Pauly, 170 U. S. 133, 42 L. Ed. 977, 18 Sup. Ct. Rep. 552; Royal Indemnity Co. of New York v. Northern Ohio Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378 (see annotations page 382); New York Indemnity Co. v. Hurst, 252 Ky. 59, 66 S. W. (2d) 8, 94 A. L. R. 864 (see annotations page 867). We have decided, however, that the facts of this case do not call upon us to again review the authorities with reference to the question under consideration, as we think the result will here be the same, whether we enforce the strict rule regarding surety contracts heretofore adhered to by this Court, or enforce the general rule supported by the weight of outside authority. At this point, however, we pause to remark that the fact that the decisions of this Court are out of harmony with the decisions generally is not due to any oversight or inadvertence on the part of this Court. Hess & Skinner Engineering Co. v. Turney, supra; Lonergan v. San Antonio Trust Co., supra.

■ When we come to construe the contracts between the Housing Authority and the contractor, we are unable to bring ourselves to the conclusion that they, construed by any rule, are subject to the construction that the surety on these Performance Bonds was intended to be bound for the payment of the premiums on the compensation and public liability insurance policies required by such contracts. In reaching this conclusion we have construed all instruments executed by the contractor as one contract. It is true that the contracts require the contractor to furnish compensation and public liability insurance. It is also true that the defeasance clause in the Performance Bonds, in sub-

·stance, states that if the contractor shall faithfully perform his contract with the Housing Authority, etc. In spite of this, we think that when the contracts are read in the light of the Performance Bonds which are prescribed in detail by the contracts, and are a part thereof, no intention to make the surety on the Performance Bonds liable for the compensation and public liability insurance premiums is shown. In this regard, we think the Performance Bonds are too specific in repeatedly naming for whose benefit they were made, and who may sue thereon, to admit of such a construction. In this connection, however, we pause to note that it is the settled law that the language of the defeasance clause in a bond, standing alone, will not give rise to a direct action on such bond in favor of parties not elsewhere in the instrument accorded such right. Standard Accident Ins. Co. v. Blyth, 130 Texas 201, 107 S. W. (2d) 880.

■ Respondent earnestly contends that Section 18 of the "Instructions to Bidders," already quoted, sustains the judgments of the two lower courts in this case. This section requires that the contractor shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, temporary construction, and all other services, facilities and costs of every nature whatsoever necessary to execute and complete the entire *work*. It is our opinion that this provision of the contract can give no aid to respondent, if for no other reason, because it furnished none of the things mentioned. Of course, it can not be said that the premiums on compensation and public liability insurance policies come within any of the specific things named. The general provision provides that the contractor shall pay all costs of every nature whatsoever necessary to execute and complete the entire *work*. It will be noted that this does not say necessary to carry out all terms of the contract, but simply things necessary to *"complete the entire work."* The work to be completed was the thing or things to be built,—the housing project. It therefore can not be said that these insurance premiums were any part of the *work* to be completed.

Respondent earnestly contends that the opinion of the Commission in Davis Company et al v. Callahan Construction Company (Com. App.), 298 S. W. 273, is authority to sustain the judgments of the two lower courts in this case. In the Davis case the contract, the performance of which the bonds, guaranteed, expressly required Davis Company to carry compensation insurance. The conditions of the bond required that Davis "shall pay all sums of money due and to become due for supplies, teams, equipment, material and labor used or contracted to be used in the performance of said contract, *as well as any and all other*

*expense incurred in the performance or attempted performance thereof."* The opinion in the Davis case holds that because the bond guaranteed the payment of all expenses incurred in the performance of the contract, the insurance company furnishing Davis the compensation insurance required by the contract could recover against the surety on Davis' performance bond for the premiums due on such compensation insurance policy. In the case at bar we have no bond that covers all expenses incurred in the performance of this contract. Finally, we wish to say that we have examined the original record in the Davis case and have carefully examined the performance bond in that case. It contains no such specific and repeated provisions regarding whose benefit it was made for, and who may sue thereon, as do these Performance Bonds.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment is here rendered for Standard Accident Insurance Company.

Opinion delivered December 6, 1944.

Rehearing overruled January 31, 1945.

Second motion for rehearing overruled November 28, 1945.