## BOGER & BOGER et al. v. CONTINENTAL FIRE & CAS. INS. CORP. et al.

### No. 14252.

Court of Civil Appeals of Texas. Dallas.

Oct. 20, 1950.

Rehearing Denied Nov. 17, 1950.

D. H. O'Fiel, Beaumont, for appellants.

Ragan & Erwin, James N. Erwin, of Houston, and Mohrle, Oster & Kaufman, of Dallas, for appellees.

CRAMER, Justice.

On July 21, 1945, appellant, A. E. Boger, entered into an agreement with appellee, Moore, Inc., under the terms of which Moore, Inc., assigned to A. E. Boger an interest in an oil and gas lease in Newton County, Texas, in consideration of Boger drilling a test well thereon. During the drilling of the well Boger, among other things, employed labor and contracted for Workmen's Compensation Insurance to cover such employees.

This proceeding was filed by Continental Fire & Casualty Insurance Corporation, the Workmen's Compensation Insurance carrier, for premiums on such insurance. The suit was against appellees, Boger & Boger, the assured, in the compensation

policy. Boger & Boger vouched in Moore, Inc., as a party to the suit, seeking judgment over against Moore, Inc., alleging that under the drilling contract between them they were entitled to a judgment over against Moore, Inc., for the amount of such premiums they owed Continental Fire & Casualty Corporation. The trial below was to the court without a jury, resulting in a judgment for the insurance carrier against the drilling contractors, Boger & Boger, and a judgment against such contractor, Boger & Boger, on their action over against Moore, Inc. Boger & Boger have duly perfected their appeal as against all parties, but in their brief here only question that portion of the judgment against them in their action over against Moore, Inc.

The record shows that in the contract wherein Moore, Inc. transferred to Boger the undivided interest in the oil lease, Boger, as a consideration therefor, obligated himself to drill an oil well thereon. The material portions of such contract involved are as follows: "2. The party of the second part shall, at his expense, furnish a drilling rig and all equipment needed in connection with and necessary for the proper drilling of said oil and/or gas well." "3. The party of the first part shall bear and pay all out-of-pocket expense brought about by and necessary to the actual drilling of said well; that is to say, that depreciation and the like on equipment used and/or furnished by the party of the second part shall not be considered as an expense to be paid by the party of the first part." "4. The depth that said well shall be drilled shall be determined by the party of the first part, provided that the party of the second part shall not be required to drill said well to a greater depth than 10,000 feet." "5. The party of the second part shall receive no salary for his services in drilling said well but shall receive in lieu thereof one-half interest in and to the lease held by the party of the first part dated the 17th day of March, 1945."

Appellant's first and only point asserts error of the trial court in holding "workmen's compensation insurance premiums were not an out-of-pocket expense brought about by, and necessary to, actual drilling of said well and thus denying A. E. Boger judgment on his cross-action over and against Moore, Inc."

Appellant states in his brief his contention as follows: "It is the appellant's contention that the proper interpretation of such contract must give application to the doctrine of 'expressio unius exclusio alterius' or, as such aid has been defined, 'the expression in a contract of one or more things of a class implies exclusion of all things not expressed, even though all would have been implied had none been expressed.' In other words, to more aptly state the contentions of the appellant, the appellant believes that by the phraseology of the contract it was the intention of the parties that the appellee, Moore, Inc., should pay all out-of-pocket expenses which by their own expressions in said paragraph three of the contract mentioned, was all expense, with the exception of depreciation and the like on equipment used and furnished which would of certainty include workmen's compensation insurance premiums, which were incurred by reason of coverage upon employees working at the well site."

In our opinion, appellant's point must be sustained. Par. 2 above provides that Boger shall furnish "a drilling rig and all the equipment needed * * *." Par. 3 provides that "Moore, Inc., shall bear and pay all out-of-pocket expense brought about by, and necessary to, the actual drilling of said well * * *." If the contract had ended there Moore, Inc. should prevail, but the contract goes further and puts definite limits on the obligation of Boger & Boger as follows: "* * *, that is to say, that depreciation and the like on equipment used and/or furnished by the party of the second part." In Par. 5 the contract states that Boger shall receive no salary for his services, etc.

This could only mean that Boger should furnish the use of his equipment (with necessary depreciation, wear and tear thereon, etc.) plus his supervision and services, and Moore, Inc. to furnish the

cash outlay necessary. The workmen's compensation insurance was necessary because of the labor employed. It is a part of the necessary expense of, and cash outlay for, the labor. Moore, Inc., however, relied on the case of Standard Accident Insurance Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 614. That was a suit by the owner against the surety of a contractor on a contractor's performance bond. In that case the contractor (not a party to the suit there) had been discharged in bankruptcy. It involved a construction of the provisions of the performance bond in the light of the contract between the contractor and the owner. The court there merely held that the bond was a statutory bond and the statutes did not "contain any provision that would render the surety on these Performance Bonds liable for the premiums on these * * * insurance policies. Finally, on this matter we wish to say that we have been cited to no statute that would render the surety on these Performance Bonds liable to one furnishing the contractor with these compensation and public liability policies for unpaid premiums". The court further held that before the surety could be held liable to a third party to the bond it must be because the contracts between the owner and the contractor *operate to give third party,* who furnished the contractor with the insurance, *a direct cause of action against the surety on these performance bonds* for unpaid premiums thereon. The court then concluded from the contract and bond no cause of action was given in favor of the insurance carrier who was not an obligee or obligor on the bond. That case is therefore clearly distinguished and not in point here. Here the action is directly between the two contracting parties and involves only a construction of the meaning of the plain and, we think, unambiguous language of the contract. Being of the opinion, for the reasons stated, that the liability for the premiums as out-of-pocket expense to be provided Boger by Moore, Inc., it follows that the judgment below as between Boger and Moore, Inc. should be reversed and that judgment should be rendered in favor of Boger and against Moore, Inc. for the amount of the premiums involved.

There being no complaint against the judgment in favor of the Continental Fire & Casualty Insurance Corporation against Boger, it should be left undisturbed.

Reversed and rendered in part, and in part left undisturbed.