**LONE STAR STEEL COMPANY, Appellant,**

v.

**C. A. REEDER and wife, Hazel Reeder, Appellees.**

No. 7732.

Court of Civil Appeals of Texas.

Texarkana.

July 12, 1966.

Rehearing Denied Aug. 9, 1966.

Robert Salmon, Linden, Burford, Ryburn & Ford, Dallas, for appellant.

Carney & Mays, Atlanta, for appellees.

FANNING, Justice.

Plaintiffs-appellees sued defendant-appellant seeking recovery of damages for an alleged breach of contract between appellant and the City of Hughes Springs, Texas, under which alleged contract appellees claimed to be third party beneficiaries. In a trial before the court without the aid of a jury, judgment for damages in the amount of $11,000.00 was rendered in favor of appellees and against appellant. Appellant has appealed.

Plaintiffs executed and delivered to the defendant two iron ore leases on their land in the city limits of Hughes Springs, in Cass County, Texas. The first lease, covering 35.7 acres, dated Oct. 23, 1952, was for a 5 year period, and by two subsequent written agreements the term was extended to Oct. 23, 1962. The second lease, covering 8 acres, was dated Jan. 10, 1955 and terminated on October 23, 1959, and it was not later extended.

The iron ore leases gave the defendant very broad uses of plaintiffs' land. Paragraph 1 of the lease on the 35.7 acre tract grants the right "to make all excavations, openings, ditches, drains, dams, railroads, wagon roads, and all other improvements or alterations which in the sole judgment of the Lessee are or may become necessary or suitable for mining, washing or screening * * * the iron ore: * * * to flood the surface, to contaminate water if necessary in beneficiating; and to do all further acts necessary or suitable in carrying on operations herein provided for, *and without further compensation to Lessor.*" (Emphasis added) Paragraph 2 provides that tailings from the washing operations may be deposited on the land. Paragraph 5 provides that Lessee "shall have the right to deposit all earth, rocks and other useless material or rubbish at such places on the demised premises as it shall select." Nowhere in the leases is there any requirement that when mining shall cease the Lessee shall remove any rocks, rubbish, tailings, water, dams, ditches or roads, or remove any irregularities in surface of the land, or in fact, take any action as to such items. The only part of the lease which pertains to the duties or obligations of the defendant upon termination of the lease is found in paragraph 11, wherein it is stated that upon termination of the lease, Lessee shall have ninety (90) days to remove its machinery, structures and other property erected on the land by Lessee.

On March 2, 1953, a regular meeting was held by the City Council of Hughes Springs, Texas, which a number of persons attended, including E. B. Germany, President of Lone Star Steel Company and Mr. Reeder, one of the plaintiffs. A record of what transpired is found in the minutes of the City Council for that date, which minutes were as follows:

"CITY COUNCIL PROCEEDINGS

Hughes Springs, Texas

"Regular meeting—March 2, 1953

"Present: Davis, Steed, Goodson, McDonald and Gordon.

"Others present: C. L. Malone, C. A. Reeder, J. Lovelace, R. Salmon,

"From Lone Star Steel: Mr. Germany, A. Tarbutton, E. Cason and S. D. Ford.

"Mr. Germany presented the Lone Star Steel Case concerning the mining of ore near and partially in the city limits and explained that it was the desire of Lone Star Steel Company to mine certain properties with the least inconvenience to the citizens of Hughes Springs. It was shown that the Lone Star Steel Company will build its own haulage roads outside of the North city limits except for a short distance on the West end of the road which would cross the city West of the old planer mill and then across the McMillan ranch toward the Beneficiation Plant. Mr. Germany further agreed that mined property within the city limits would not be left in a hazardous condition or in such a condition as to create any sort of a public nuisance as determined by the City and State Health officers. Goodson moved and Parrish seconded that the City Council accept the

Lone Star Steel mining plans as presented on this date.

"For: Goodson, Gordon, Steed, McDonald, Parrish and Davis."

The trial court filed findings of fact and conclusions of law. The findings of fact are shown in part below.[1]

Appellant's points 1, 3, 5 and 6 are as follows:

### "FIRST POINT

"The trial court erred in holding in favor of the plaintiffs for the reason that the undisputed evidence shows that the rights of the parties herein are determined solely by the pertinent iron ore leases, which leases bar any recovery by the plaintiffs.

1.      "FINDINGS OF FACT
"The Court finds in this case that C. A. Reeder executed certain iron ore contracts to the Lone Star Steel Company about the year 1952; that after said leases were executed and before they were paid for, there was a meeting held by the Lone Star Steel Company and the City Council of the City of Hughes Springs on March 2, 1953, as there was a question of whether or not iron ore could be mined in the town of Hughes Springs, Texas. The plaintiff, Mr. Reeder, was the instigator of this meeting and was present at same, and Mr. E. B. Germany was President of the Lone Star Steel Company and he was representing the steel company. The Court finds that all the property involved herein was in the City of Hughes Springs, Texas, on March 2, 1953, and was at the time of the trial of this case.
"The Court finds that at the meeting of the Lone Star Steel Company, represented by E. B. Germany, and the City of Hughes Springs a supplemental agreement was made by the Lone Star Steel Company to the iron ore contracts executed by the C. A. Reeders to Lone Star Steel Company on March 2, 1953, which was as follows: (Note: Here follows quotation of minutes of City Council hereinbefore quoted in this opinion.)
"The Court further finds that the Lone Star Steel Company went in and mined the iron ore out on the land described in the contracts between Reeder and the steel company and completed about October 1962. The Court finds that the steel company levelled up three or four acres

### "THIRD POINT

"The trial court erred in finding as a fact that the defendant and the City of Hughes Springs entered into an agreement which was a supplement to the iron ore leases, and in concluding that under such supplemental agreement the plaintiffs were the beneficiaries of the same and were entitled to recover damages from the defendant, as such findings and conclusions were contrary to the undisputed evidence and the law of this State.

### "FIFTH POINT

"The trial court erred in holding in favor of the plaintiffs for the reason that the undisputed evidence shows that the written leases were not amended or

of the land that they had mined, and the remainder of said land they made no attempt to level up and left same full of holes which hold water throughout the year, high clifts, deep cuts in the ground, ditches and ravines which changed the drainage of the water fall on the area, and that same was left by the Lone Star Steel Company in a dangerous and hazardous condition. The Court further finds that the way the Lone Star Steel Company left the land after they completed mining created a nuisance both public and private to the plaintiff and other people living in the City of Hughes Springs.
"The Court further finds that the plaintiff C. A. Reeder is a resident of the City of Hughes Springs, Texas. The Court finds that E. B. Germany had the authority and power to bind the Lone Star Steel Company when they entered into the above agreement with the city of Hughes Springs, and that this agreement was a supplement to the mining contracts which C. A. Reeder executed to the defendant along about 1952 and that the defendant, Lone Star Steel Company, should have abided by the supplemental agreement, and having failed to do so the plaintiff was entitled to recover the amount it would cost to remove the hazards, nuisances and dangerous conditions where the said ore was mined. The Court finds that the sum of $11,000.00 as shown by the testimony of Mr. Lawrence Caver, the contractor, was a reasonable amount to be paid to plaintiff for the removing of the hazards, nuisances and dangerous conditions on the land that the steel company had completed mining on."

changed by any agreement in writing between the parties.

## "SIXTH POINT

"The trial court erred in holding in favor of the plaintiffs for the reason that if a contract was made between the City of Hughes Springs and the defendant, the undisputed evidence shows that the plaintiffs were not third-party beneficiaries of such contract."

■ It is clear that appellees can not recover damages under the terms of the written leases in question as such leases, for the consideration stated therein, clearly gave appellant the right to mine appellees' property in the manner in which it was mined and *"without further compensation to Lessor."* It is thus clear that appellant had no duty under such leases to take any action to remove irregularities in the surface of plaintiffs' land when mining was completed, unless the plaintiffs can establish that some other valid and binding agreement was made between the parties which had the effect of amending the two leases which would allow further compensation to plaintiffs.

■ The transaction between plaintiffs and appellees falls within the impact of the Statute of Frauds, Art. 3995, Vernon's Ann. Tex.Civ.St., as the two written iron ore leases, as well as the two extensions, were for a term of more than one year each.

It follows that such leases could be amended only by an instrument in writing and not by any oral agreement between the parties. Michael v. Busby, 139 Tex. 278, 162 S.W.2d 662 (1942); Gardner v. Sittig, Tex.Com.App., 222 S.W. 1090 (1920); Fleming v. Todd, Tex.Civ.App., 42 S.W.2d 123, wr. dism. (1931).

If there was any contract between the City of Hughes Springs and appellant it was clearly oral as no written contract with the City was signed by Lone Star Steel Company, "the party to be charged."

■ It is our further view that appellants could not recover as alleged third party beneficiaries for any alleged breach of the alleged contract, even if it be assumed that there was any contract between the City and Lone Star Steel Company. In this connection see the following authorities: House v. Houston Water Works, 88 Tex. 233, 31 S.W. 179, 28 L.R.A. 532 (1895); United States Fidelity & Guaranty Co. v. Eubanks, 126 Tex. 405, 87 S.W.2d 248 (1935); Banker v. Breaux, 133 Tex. 183, 128 S.W.2d 23 (1939); Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612 (1945); Carnes Corporation v. Therman Supply, Inc., Tex.Civ.App., 359 S.W.2d 99, no writ (1962).

■ Considering third-party contracts generally, our courts have uniformly restricted recovery under such contracts to situations where the parties clearly intended to benefit the third party. In Standard Acc. Ins. Co. v. Knox, supra (184 S.W.2d 612) it is stated:

"A person not a party to a contract may sue thereon for himself if it appears that it was made for his benefit, but the presumption is that parties contract for themselves alone; and a contract will not be construed as having been made for the benefit of a third party, unless it clearly appears that such was the intention of the contracting parties. Citizens Natl. Bank [in Abilene] v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, and authorities there cited."

In Carnes Corporation v. Therman Supply, Inc., supra (359 S.W.2d 99) it is stated:

"The law is well settled that one claiming to be a third party beneficiary succeeds or fails according to the provisions of the contract sued upon. Western Union Telegraph Company v. Douglass, 104 Tex. 66, 133 S.W. 877."

In Banker v. Breaux, *supra* (128 S.W.2d 23) it is stated:

"The law is well-established that a third person may sue to enforce a contractual provision made for his benefit, but to entitle him to enforce such provision it must be shown that the contracting parties intended to make same for his benefit. The intention of the contracting parties in this respect is of controlling importance."

In United States Fidelity & Guaranty Co. v. Eubanks, *supra* (87 S.W.2d 248), Schwalbe had a contract with the State of Texas to pave a highway; Eubanks, a member of the public, was killed through the alleged negligence of Schwalbe and Eubanks' relatives sued Schwalbe and his bonding Company; the bond in question contained a condition that the bonding company guaranteed the payment of all liabilities for injuries which have been incurred in and about the said construction * * *"; the court held in said case that the bond was for the benefit of the State Highway Fund, as well as laborers and materialmen, and did not extend to the plaintiffs and the court stated that "in order to entitle a third person to sue on a contract in which he is not named as a party, it must have been made for his benefit as its object, and he must be the party intended to be benefited."

In House v. Houston Water Works, *supra* (31 S.W. 179), defendant water company had a contract with the City of Houston to supply water of a specified pressure and quantity to the citizens of the city; plaintiff sued the company for loss of property by fire, contending the company did not furnish proper quantity of water at proper pressure to enable the fire department to extinguish the fire; plaintiff sued claiming as a third-party beneficiary under the city's contract and also sued in tort. The court denied liability under the contract, holding that the contract was made for the benefit of the city and its citizens generally and not for the benefit of the plaintiff specifically nor for any other such citizen. The court also denied any liability on a tort theory, stating:

"It is not true that for every failure to perform a public duty an action will lie in favor of any person who may have suffered injury by reason of such failure. If the duty is purely a public duty, then the individual will have no right of action; but it must appear that the object and purpose of imposing the duty was to confer a benefit upon the individuals composing the public."

It does not "clearly appear" from the council minutes in question, that the city and Lone Star Steel Company intended to make a contract for the plaintiffs' individual benefit which would create a property right or contract right in favor of the plaintiffs. We think it would be very speculative to say that the city intended to create such a property right or contract right in favor of the plaintiffs and we think it would be even more speculative to say that Lone Star Steel Company intended to do so in view of the specific terms of its written leases with the plaintiffs.

Appellant's points 1, 3, 5 and 6 are sustained. We deem it unnecessary to discuss appellant's other points.

The judgment of the trial court is reversed and judgment is rendered that appellees take nothing from appellant.

Reversed and rendered.