United States Court of Appeals,

Fifth Circuit.

No. 92-2324.

In the Matter of TIMELY SECRETARIAL SERVICE, INC., Debtor.

GENERAL ELECTRIC CREDIT CORPORATION, Appellant,

v.

TIMELY SECRETARIAL SERVICE, INC., Appellee.

April 8, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, KING, and WIENER, Circuit Judges.

KING, Circuit Judge:

This appeal concerns the scope of a bankruptcy court's power to reimpose a previously-lifted automatic stay and award the debtor possession of certain leased premises that were retaken by the lessor while the stay was lifted. The lessor argues on appeal that the bankruptcy court exceeded any power it had to reimpose the stay and award possession of the leased premises to the debtor. For the following reasons, we agree and therefore remand this case to the district court with instructions to vacate the bankruptcy court's order reinstating the automatic stay and awarding possession of the leased premises to the debtor.

I. *BACKGROUND*

In March 1988, Timely Secretarial Service, Inc. ("Timely Secretarial") leased office space from Colonial Norfolk Limited Partnership, the predecessor in interest to General Electric Credit Corporation ("General Electric").[1] The lease agreement was for a term of eighty-four months and provided, among other things, that

> If an Act of Default occurs, [General Electric], at any time thereafter prior to the curing of such Act of Default and without waiving any other right available to [General Electric] herein, at law or in equity, may either terminate this lease or terminate [Timely Secretarial's] right to

---

[1]For purposes of this opinion, Colonial Norfolk Limited Partnership, the party who originally leased the office space to Timely Secretarial, will be referred to as General Electric, the name of its successor in interest.

possession, whichever [General Electric] elects. In either event, [General Electric] may without additional notice re-enter and repossess the Leased Premises and remove all persons and property therefrom using such force as may be reasonably necessary, and [Timely Secretarial] hereby waives any claim arising by reason thereof or by reason of issuance of any distress warrant or writ of sequestration and agrees to hold [General Electric] harmless from any claims.

The lease agreement also authorized Timely Secretarial, the lessee, to assign or sublet the premises, but only with "prior express written permission" from General Electric. Finally, the lease contained an entirety clause, under which any modification or amendment had to be in writing and signed by both parties.

Timely Secretarial thereafter sublet the leased premises to various third parties in accordance with the lease agreement. These third party subtenants, it appears, timely paid rent to Timely Secretarial for about a year. During this same time period, however, Timely Secretarial became delinquent in paying its rent to General Electric.

On March 27, 1991, General Electric instituted eviction proceedings against Timely Secretarial and its subtenants in Texas state court. General Electric alleged that Timely Secretarial was delinquent in paying rent and requested the state court to forcibly evict Timely Secretarial from the leased premises. The state court obliged and, on April 8, 1991, entered a judgment stating that, unless Timely Secretarial voluntarily vacated the premises, a writ of possession would issue in favor of General Electric on April 13, 1991.

On April 16, 1991, before General Electric had retaken possession of the leased premises, Timely Secretarial filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. General Electric, in turn, filed a motion for relief from the automatic stay and sought an expedited hearing on that motion. The bankruptcy court declined to expedite the hearing on General Electric's motion for relief from the stay and instead set the matter for final hearing on May 15, 1991.

At the May 15 hearing on General Electric's motion to lift the stay, counsel for General Electric announced to the bankruptcy court that Timely Secretarial had agreed to have the automatic stay lifted. When the bankruptcy court asked Timely Secretarial why it was agreeing to have the stay lifted, the following colloquy occurred:

COUNSEL FOR TIMELY SECRETARIAL:  We've reached an agreement that I believe it can—we can now continue with the operation as before.

THE COURT:  Continue the operation where?

COUNSEL FOR TIMELY SECRETARIAL:  Continue the operation of Timely, being able to pay off debts.

THE COURT:  Where?  Where and how?

COUNSEL FOR TIMELY SECRETARIAL:  We've reached an agreement with the petitioner.

THE COURT:  What is the effect of this on your subtenants?

COUNSEL FOR TIMELY SECRETARIAL:  They've already been notified.  Maybe Mr. Waddell [counsel for General Electric] can explain additional ramifications of that.

* * * * * *

COUNSEL FOR GENERAL ELECTRIC:  Your Honor, we have—what happened was General Electric Credit Corporation foreclosed on Colonial Norfolk Limited Partnership.  At that point, the Debtor de— determined it did not want to pay the arrearages and found new space and is going to move to the new space.  Concerning what happens with the subtenants, we haven't had no communications with the subtenants.  Apparently Timely has and I'm not sure what arrangements they've made with the subtenants.

COUNSEL FOR TIMELY SECRETARIAL:  We are taking the subtenants to a new location, Your Honor.

After this exchange, the bankruptcy court signed the one page agreed order presented by General Electric and Timely Secretarial.  The order indicated that the automatic stay was being lifted as to the leased premises on the ground that "cause exists for the lifting of the stay."  The agreed order made no reference to any underlying agreement between General Electric and Timely Secretarial concerning the subtenants who were presently occupying the leased premises.

Later that same day, General Electric had a writ of possession issued by the state court and forwarded it to the constable for service on Timely Secretarial and all occupants of the leased premises.  The next day, May 16, 1991, the Harris County Constable served writs of possession on Timely Secretarial and its subtenants.  As the writs of possession instructed, Timely Secretarial and its subtenants immediately vacated the leased premises.

Meanwhile, Timely Secretarial had filed a motion to dismiss its Chapter 11 bankruptcy petition with the bankruptcy court.  In support of its motion to dismiss, Timely Secretarial

represented that it would be able to satisfy its creditors without effecting a plan of reorganization. After they were evicted from the leased premises, however, two of Timely Secretarial's subtenants filed an objection to the motion to dismiss. They alleged that, because they did not receive notice of the eviction, General Electric and Timely Secretarial "entered into a civil conspiracy to defraud and cause harm resulting in [their] eviction."

The bankruptcy court scheduled a hearing on Timely Secretarial's motion to dismiss on the morning of July 2, 1991. Among those present at the hearing were counsel for the objecting subtenants, the trustee, and Timely Secretarial—but not General Electric.[2] Soon after this hearing began, the bankruptcy court asked counsel for Timely Secretarial what happened after the automatic stay was lifted, and counsel responded:

> After the stay was instituted your honor, we had an agreement with a management company. First of all that all past due rent would be forgiven. That all individuals who had rented through Timely would be allowed to stay for the end of the month [of May]. Also Timely had negotiated to contract with another building within a few blocks and was going to move the majority of the clients with them to a new building.

Upon hearing a brief further statement by Timely Secretarial's counsel, the bankruptcy court stated: "I'm going to set aside the [Agreed] Order.... I'm setting the dadgum thing aside. For fraud."

The bankruptcy court then requested counsel for Timely Secretarial to call General Electric's counsel and determine whether General Electric could appear in court to explain the eviction. General Electric's counsel advised Timely Secretarial that he could appear at the bankruptcy court's convenience. Accordingly, the bankruptcy court ordered a recess and reset the matter for the same afternoon.

Upon reconvening the afternoon of July 2, the bankruptcy court heard evidence from two Timely Secretarial attorneys, a General Electric witness, and counsel for General Electric. Thereafter, the bankruptcy court determined that there had been an agreement that Timely Secretarial and its subtenants could remain on the leased premises through the end of May 1991. The bankruptcy court further determined that General Electric breached the agreement by evicting Timely Secretarial and

---

[2]General Electric concedes that it received sufficient notice of the bankruptcy court's intent to address Timely Secretarial's motion to dismiss, but maintains it had no notice that the court intended to reconsider the agreed order lifting the automatic stay.

its subtenants immediately after the agreed order was signed. Ultimately, the bankruptcy court *sua sponte* set aside the agreed order on grounds of fraud, reimposed the automatic stay, and awarded possession of the leased premises to Timely Secretarial and its subtenants.

General Electric timely appealed the bankruptcy court's decision to the district court. The district court affirmed the bankruptcy court's order and held that (1) the manner in which the July 2, 1991 hearing was conducted did not violate General Electric's due process rights, (2) the bankruptcy court's factual findings were not clearly erroneous, and (3) the bankruptcy court did not abuse its discretion by rescinding the agreed order and reinstating the automatic stay. This appeal followed.

## II. DISCUSSION

On appeal, General Electric essentially raises two challenges to the district court's decision affirming the reinstatement of the automatic stay. General Electric first argues that, contrary to the district court's conclusion, its due process rights were violated by the manner in which the bankruptcy court conducted the hearing to reconsider the agreed order. General Electric also contends that the district court wrongly concluded that the bankruptcy court committed no reversible error in setting aside the agreed order and reimposing the automatic stay.

As discussed below, we conclude that General Electric's due process rights were indeed violated by the manner in which the bankruptcy court decided to vacate the agreed order and reimpose the automatic stay. We further conclude that, on the undisputed facts of this case, there is no legal basis for vacating the agreed order lifting the automatic stay. Accordingly, we reverse the decision of the district court, vacate the bankruptcy court's order reimposing the automatic stay and awarding Timely Secretarial possession of the leased premises, and reinstate the agreed order lifting the stay.

## A. Due Process Violation

The district court concluded that General Electric's due process rights were not violated by the manner in which the bankruptcy court reconsidered the agreed order. In reaching this conclusion, the district court first noted that counsel for General Electric (a) was in fact notified (by telephone) at 10:45 a.m. on July 2, 1991, of the bankruptcy court's intent to reconsider the agreed order lifting

the automatic stay and (b) indicated that he was available for the hearing within thirty minutes or at the court's convenience. The district court further noted that, from the transcript of the afternoon hearing, "[t]here is no evidence from the record that [General Electric's] counsel was unprepared or surprised by the [bankruptcy] court's inquiries." Finally, the district court emphasized that counsel for General Electric never objected to the short notice or requested a continuance to further prepare evidence and locate witnesses.

On appeal, General Electric argues that the district court erred in finding no due process violation. General Electric argues that, even before it received telephonic notice of the bankruptcy court's intention to reconsider the agreed order, the bankruptcy court had taken evidence on the matter and had made up its mind to vacate the agreed order and reinstate the automatic stay. General Electric further contends that the two and a half hour notice it received for the afternoon hearing did not provide it with "adequate notice of the court's intention to address the circumstances around the execution of the agreed order." For the following reasons, we agree with General Electric that it did not receive adequate notice of the bankruptcy court's intention to vacate the agreed order.

Basic principles of due process required the bankruptcy court to give General Electric reasonable notice of its intent to reconsider the agreed order lifting the automatic stay. Indeed, the Supreme Court has recognized that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1960). Moreover, because this was a "contested matter" within the meaning of the Bankruptcy Rules, General Electric was entitled to receive "reasonable notice and opportunity for hearing." BANKR.R. 9014. Finally, we have indicated that a court, when acting on its own initiative to grant relief under Rule 60(b) of the Federal Rules of Civil Procedure, must generally "give[ ] some sort of *written notice* to the parties."[3] *Chavez v. Balesh,* 704 F.2d 774, 777

---

[3]The bankruptcy court did not expressly indicate whether it was setting aside the agreed order under Rule 60(b) or under its inherent power to prevent a "fraud on the court." Although we do not decide today whether a court—before vacating a judgment under its inherent power—must

(5th Cir.1983) (citing *McDowell v. Celebrezze,* 310 F.2d 43, 44 (5th Cir.1962)).

The notice provided to General Electric was not, in our view, adequate to comply with due process constraints. It was provided to General Electric over the phone by counsel for Timely Secretarial, and afforded General Electric only two and a half hours to prepare its objections to the court's decision to reinstate the stay. More important, however, the notice was provided to General Electric *after* the bankruptcy court had heard testimony from Timely Secretarial's counsel and had indicated on the record that it was going to set the "dadgum" agreed order aside. There is no evidence that counsel for Timely Secretarial, when he telephoned counsel for General Electric, conveyed a full description of what had transpired during the morning "hearing." Under the circumstances, we cannot say that this telephonic notice was reasonably calculated to apprise General Electric of the pendency of the hearing to reinstate the stay and afford it any meaningful opportunity to present its side of the story.[4] Moreover, our review of the record reveals no reason for the bankruptcy court's rush to vacate the agreed order; by July 2, 1991, the subtenants had already been evicted and had relocated to other premises.

Accordingly, we hold that the manner in which the bankruptcy court conducted the hearing to reconsider the agreed order violated General Electric's procedural due process rights. Before *sua sponte* deciding to vacate the agreed order and reimpose the automatic stay, the bankruptcy court was required to provide General Electric with reasonable notice, such that General Electric would have

---

provide *written notice* to interested parties, we do hold that, in such a situation, a court must provide *reasonable* notice to interested parties.

[4]We note that, as a general rule, any objection to the adequacy of a bankruptcy court's notice of hearing must be raised when the party complaining about the inadequate notice first appears at the hearing. *See Matter of Muller,* 851 F.2d 916, 919 (7th Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989). In this case, however, General Electric not only complains about the inadequate notice concerning the afternoon hearing on July 2, but also about the complete lack of notice with respect to the "preliminary hearing" on the morning of July 2. If the bankruptcy court, on the morning of July 2, had not (a) heard testimony from Timely Secretarial concerning the alleged agreement to allow it and its subtenants to remain on the leased premises through the end of May 1991, and (b) announced its intention to reinstate the stay, we might agree with the district court that General Electric's failure to object or request a continuance precludes any complaint about inadequate notice. In our view, however, the crucial hearing occurred during the morning of July 2 (when General Electric was not present or notified), and not that afternoon.

a meaningful opportunity to present its objections.[5]  As General Electric notes in its brief, from the

July 2 hearing transcript,

> it is clear that the [b]ankruptcy [c]ourt relieved [Timely Secretarial] from the agreed order, prior to [General Electric] or its attorney being present, on its own motion, without giving fair notice to [General Electric], its counsel or other creditors of the bankruptcy estate, of the [c]ourt's intent to do so.

Thus, we conclude that the district court erred in finding no due process violation.

## B. The Problem With Vacating the Agreed Order

 Having found that General Electric's due process rights were violated, we ordinarily would remand the case to the bankruptcy court with instructions to afford General Electric the process it is due.  That is, we would remand so that, after reasonable notice and opportunity for hearing, the bankruptcy court could decide whether General Electric violated the terms of the agreed order.  In this case, however, we do not remand the case, because we conclude that, under the controlling law in this case, the alleged *oral agreement* between Timely Secretarial and General Electric does not provide a sufficient basis for vacating the agreed order lifting the automatic stay.

First, we note that the Bankruptcy Rules speak directly to the issue of agreements relating to relief from the automatic stay.  Rule 4001 provides, in pertinent part:

> A motion for approval of an agreement ... to modify or terminate the stay provided for in § 362 ... shall be served on any committee elected pursuant to § 705 or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to § 1102, on the creditors included on the list filed pursuant to Rule 1107(d), and on such other entities as the court may direct. *The motion shall be accompanied by a copy of the agreement.*

BANK.R. 4001(d)(1) (emphasis);  *accord* LOCAL R.BANKR. (S.D.Tex.) 4001(d)(1) ("If a debtor reaches an agreement for relief from the stay, ... the interested party or debtor may move for approval

---

[5]Had the bankruptcy court provided General Electric with reasonable notice, General Electric might have had a meaningful opportunity to rebut the testimony of Timely Secretarial's counsel as to what assurances had been given to the bankruptcy court at the May 15 hearing.  For example, General Electric probably could have pointed out that, instead of taking testimony regarding what the parties supposedly agreed to at the May 15 hearing, the bankruptcy court could obtain a transcript or the tape of that hearing.  The transcript or tape of the May 15 hearing would have, in our view, obviated the need for the bankruptcy court's "findings"—based on conflicting testimony from attorneys who were present at the hearing some two months before—about what actually transpired at the hearing.

of the agreement, in lieu of moving for the relief itself. *The motion must have a copy of the agreement attached.*") (emphasis added). Although Rule 4001(d) does not expressly require agreements to modify or terminate the stay to be in writing to be enforceable, the language of the rule, in our view, contemplates that such agreements be in writing and made part of the record. In any event, the alleged oral agreement in this case clearly violates the terms of Rule 4001.

Because of the nature of the alleged oral agreement in this case, however, we need not decide today whether federal law requires that agreements to lift the automatic stay be in writing or otherwise made a part of the record to be enforceable.[6] Even under Texas law—which would govern the enforceability of the instant agreement in the absence of a controlling federal rule—the alleged oral agreement between General Electric and Timely Secretarial is not enforceable. First, it constitutes a material modification of the terms of the lease, which upon Timely Secretarial's default, gave General Electric the right to immediately retake possession of the premises. Under Texas law, a material modification of a lease required to be in writing must also be in writing. *See Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 388-89 (Tex.App.—San Antonio 1990, writ denied);

---

[6]The dispute we decide today presents a strong argument for adopting such a rule with respect to agreements to lift or modify the automatic stay. Indeed, our review of both the morning and afternoon hearings on July 2, 1991, reveals utter confusion on the part of counsel for both parties, as well as on the part of the bankruptcy court itself. At one point in the morning hearing, counsel for Timely Secretarial testified that he had been negotiating with the management company—and not General Electric or its predecessor in interest—for an agreement to allow the subtenants to remain on the premises until the end of May 1991. During the afternoon hearing, by contrast, counsel for Timely Secretarial suggests that General Electric agreed to allow the subtenants to remain on the premises, but only after the automatic stay had been lifted and the constable had posted a notice to vacate.

> Thus, although we do not decide today whether an oral agreement which forms the basis for an agreed order to lift or modify the stay, in violation of Rule 4001, is thereby rendered unenforceable, we note that such a rule would have logic. As the Texas Supreme Court observed long ago in an analogous context:

>> Agreements of counsel, respecting the disposition of causes, which are merely verbal, *are likely to be forgotten, and to beget misunderstandings and controversies;* and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them.

*Birdwell v. Cox,* 18 Tex. 535, 537 (1857) (emphasis added) (quoted in *Kennedy v. Hyde,* 682 S.W.2d 525, 526-27 (Tex.1984)).

*Lone Star Steel Co. v. Reeder,* 407 S.W.2d 28, 31 (Tex.Civ.App.—Taxarkana 1966, writ ref'd n.r.e.). Moreover, the oral agreement between General Electric and Timely Secretarial is not enforceable under the express terms of the lease agreement itself, which expressly provides that modifications and amendments must be in writing. Finally, under Texas law the alleged oral agreement between General Electric and Timely Secretarial arguably constitutes an unenforceable oral settlement of the forcible entry and detainer action that was still pending in Texas state court before the May 15 hearing. *See* TEX.R.CIV.P. 11 ("No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."); *see also Kennedy v. Hyde,* 682 S.W.2d 525, 528 (Tex.1984) ("Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments.").

We therefore conclude that the provision of the agreement allegedly violated by General Electric—namely, that it would allow Timely Secretarial and the subtenants to remain on the leased premises through May 1991—cannot be enforced. First, no one contends that this provision was in writing or attached to the agreed order. In fact, at the July 2, 1991 hearing, counsel for Timely Secretarial conceded that, although General Electric had agreed in writing to release Timely Secretarial for unpaid rent, the alleged agreement to allow Timely Secretarial and its subtenants to remain on the leased premises until the end of May 1991 was never reduced to writing. Second, the agreed order actually signed by the parties and the bankruptcy court on May 15, 1991 contains no reference to an agreement allowing Timely Secretarial and its subtenants to remain on the premises through the end of May. The agreed order merely states that the bankruptcy court, having found that cause exists for the lifting of the stay, orders the automatic stay lifted as to the leased premises.[7] And

---

[7]The United States Trustee and the bankruptcy court effectively have read a condition precedent into the May 15 agreed order vacating the stay. Under their reading of the order, the stay was to lift only if General Electric assured that the subtenants of Timely Secretarial were taken care of by being allowed to remain on the premises until the end of May 1991. On this score we agree with the court in *In re Comprehensive Business Systems,* 119 B.R. 573, 580 (Bankr.S.D.Ohio 1990), that condition precedents to agreed orders, like conditions precedent to most contractual obligations, are not favored and must be expressed in plain, unambiguous language.

third, at the hearing on May 15—which occurred immediately before the bankruptcy court signed the agreed order—General Electric never agreed to allow Timely Secretarial and the subtenants to remain on the premises. Indeed, when asked about the subtenants, counsel for General Electric responded: "Concerning what happens with the subtenants, we haven't had no communications with the subtenants. Apparently Timely has and I'm not sure what arrangements they've made with the subtenants."

In sum, the alleged oral agreement between Timely Secretarial and General Electric, which would have allowed the subtenants to remain on the premises through the end of May 1991, does not provide a sufficient basis for vacating the agreed order lifting the automatic stay. The agreement violated Rule 4001 of the Bankruptcy Rules and is unenforceable under Texas law. In our view, something more concrete would be required to support the bankruptcy court's decision to vacate the agreed order, reimpose the automatic stay, and award possession of the leased premises to Timely Secretarial and its subtenants.

## III. CONCLUSION

The district court erred in affirming the bankruptcy court's order reinstating the automatic stay and awarding possession of the leased premises to Timely Secretarial and its subtenants. The manner in which the bankruptcy court decided to vacate the agreed order lifting the stay violated General Electric's procedural due process rights. In addition, the bankruptcy court erroneously relied on an alleged oral agreement to modify the lease—an agreement clearly not made part of the record—in concluding that General Electric committed fraud on the court. We therefore REVERSE the decision of the district court and REMAND with instructions to VACATE the bankruptcy court's order reinstating the automatic stay and awarding possession of the leased premises to Timely Secretarial and its subtenants.