**UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,**

v.

**BORDEN METAL PRODUCTS COMPANY, Appellee.**

**No. 7841.**

Court of Civil Appeals of Texas, Beaumont.

July 8, 1976.

Rehearing Denied July 29, 1976.

D. W. Garrett, Houston, for appellant.

W. C. McClain, Conroe, Ralph S. Carrigan, Houston, for appellee.

KEITH, Justice.

This is an appeal by the surety cast in judgment in a suit by a materialman suing upon a construction payment bond. The trial was to the court and extensive findings of fact and conclusions of law were filed. We affirm.

Central Louisiana Electric Company needed a generating plant constructed at Boyce, Rapides Parish, Louisiana. It contracted with Babcock and Wilcox Company ["B&W"] to construct and erect the steam boilers in the plant; and, for the purposes of this appeal, B&W is to be considered the general contractor.[1] B&W entered into a subcontract with National Fabricating Company ["National Fab"] for the fabrication, but not the erection, of the metal walkways and stairways, called gallery work, around the boilers.

B&W required National Fab to be bonded and it paid the premium on the bonds as a part of the subcontract price. It received two bonds on forms provided by our appellant, United States Fidelity & Guaranty Company ["Surety"] which were titled "Subcontract Performance Bond" and "Subcontract Labor and Material Bond", respectively.

■ Thereafter, National Fab entered into an oral subcontract with Borden Metal Products Company ["Borden"] for the fabrication of the metal grating portion of the gallery work. National Fab failed to complete its contract with B&W and left the job owing Borden $24,913.45. Borden sued B&W and Surety upon the material bond.[2] B&W answered by a general denial and filed an action over against Surety insisting upon the payment by Surety of the indebtedness due Borden. Surety answered by pleading numerous policy defenses, some of which will be discussed herein. In a nonjury trial, judgment was entered in favor of

Borden against Surety for its indebtedness and a take nothing judgment was entered as to B&W.

■ As noted earlier, the trial court filed extensive findings of fact. In considering the contentions advanced by Surety we do so under the rule enunciated in *Commercial Union Assurance Company v. Foster,* 379 S.W.2d 320, 322 (Tex.1964). If there is some evidence of a substantial and probative character to support the trial court's findings of fact, they are controlling upon this court and will not be disturbed, even though this court may have reached a different conclusion.

■ It is well to recognize at this point another rule of equal importance in passing upon Surety's complaints as to factual insufficiency of the evidence. The surety has the burden of establishing the defense of discharge by reason of an extension or alteration, or similar defenses. *Hester v. Ross, Banks, May, Cron & Cavin,* 492 S.W.2d 378, 379 (Tex.Civ.App.—Waco 1973, no writ), and authorities therein cited.

■ The court's findings of fact are analogous to jury findings in response to special issues submitted in the court's charge. *Nathan v. Hudson,* 376 S.W.2d 856, 862 (Tex. Civ.App.—Dallas 1964, writ ref'd n.r.e.). In the article entitled "Evidence Points on Appeal," *37 Tex.B.J. 839, 840 (September, 1974),* the author speaks to the burden of one challenging jury findings using this language:

"When a party has the burden of proof on an issue and the jury fails to answer his special issue in his favor, on appeal he maintains that he carried his burden of proof. The purpose of his complaint is twofold: (1) to neutralize the jury's adverse answer, which in effect held that he did not carry his burden, and (2) to show

1. Although the ultimate site of the electric generating plant was in the State of Louisiana, all parties agree that Texas law controls.

2. Borden alleged that National Fab was notoriously insolvent. B&W called Surety's counsel as a witness on this issue and elicited evidence which we find to be sufficient to support the

trial court's express finding that National Fab was in fact notoriously insolvent and was not a necessary party. So holding, points six and seven, complaining of the nonjoinder of National Fab, are overruled. See *Standard Acc. Ins. Co. v. Knox,* 144 Tex. 296, 184 S.W.2d 612 (1945).

that he did carry his burden. He has a conceptually more difficult task on this kind of issue because he has to first disprove the finding, then prove the reverse."

In its first point of error, Surety contends that the trial court's finding that B&W did not grossly or materially deviate from its contractual payment obligations with National Fab is against the great weight of the evidence; in its second point, Surety contends that the evidence shows conclusively that B&W did deviate grossly and materially from its contractual payment obligations. These evidentiary points are submitted with an argument proceeding along these lines:

1. A material departure from the express requirements of a contract for which a bond has been issued, with regard to the times and amounts of payments, without the surety's consent, operates to discharge the surety from liability.

2. Overpayment by the obligee of a bond will release the surety.

3. A surety is only bound by the strict terms of the contract. "It is often said that the liability of a surety is strictissimi juris, that is, held to the letter of the contract."

4. "[T]he surety is 'deemed a favorite of the law . . . .'"

Surety cites one or more Texas cases which it asserts support each of the several positions noted above.

Before we enter into our discussion of the authorities, it is well to express our reluctance to continue following the cases cited by Surety. More than thirty years ago, Justice Critz noted that the Texas decisions were "out of harmony with the great weight of authority in this country." *Stan-*

*dard Acc. Ins. Co. v. Knox,* 144 Tex. 296, 184 S.W.2d 612, 615 (1945). Yet, we have in this case a corporate surety which has entered into a contract of suretyship for profit, contending that it is "a favorite of the law" and that it is entitled to have its liability determined under the rule of *strictissimi juris,* "meaning that the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract." *McKnight v. Virginia Mirror Company,* 463 S.W.2d 428, 430 (Tex.1971).[3]

■ This surety prepared its own printed form of bond for use in this transaction and collected a premium from B&W for the risk it undertook as surety upon the bond. Our record shows that it is a compensated corporate surety[4] and should be held liable as such.

■ We recognize that the question was reserved by the Supreme Court in *Standard Acc. v. Knox,* supra, and that it is our duty, as an intermediate court, to follow the decisions of the Supreme Court and to leave changes to the court of last resort. See *Wilkinson v. Stevison,* 514 S.W.2d 895, 897 (Tex.1974). However, we consider it our duty to point out to the Supreme Court the desirability of reconsidering the rule with reference to compensated corporate sureties.

If we were free to adopt the rule prevailing in the majority of the jurisdictions in this country, we could and would follow the rule enunciated in the *Restatement of the Law of Security,* § 82, Comment i (1941):

"It is important to distinguish between compensated and other sureties because the rules of suretyship, *notably those relating to the defenses of the surety,* are

---

3. We have examined very carefully the cases cited by Justice Daniel in *McKnight,* supra, including the long list of Texas cases cited in the text (38 C.J.S. Guaranty § 38d, at pp. 1181–1183, and note 19 at page 1182, including those cited in the 1976 cumulative pocket part) and find none which specifically mentioned that the surety was a compensated corporate surety such as we have in the case under consideration.

4. The corporate surety in this case has been in business for eighty years and does business in all of the fifty states. In 1975, it had a *net* premium income in excess of $952,000,000; it had admitted assets in excess of 1.8 billion dollars; and, it paid nearly forty million dollars in cash as dividends to its stockholders. Source: *2 Moody's Bank & Finance Manual,* pp. 1888–1889 (Moody's Investors Service, Inc., N.Y., 1976).

not in all respects alike for the two classes. The basis for the distinction is that one engaged in the business of executing surety contracts can be expected to have contemplated and taken account of, in the premium charged, certain elements of risk which are not considered to have been assumed by other sureties." (emphasis supplied)

However, considering the broad and extensive findings of fact and conclusions of law filed by the trial court, we arrive at what we consider to be the correct result following the Texas minority rule about which we complain.

The trial court found as a fact [No. 19] that the contract between B&W and National Fab was not "substantially or materially changed, modified or altered." Other findings are summarized: The purchase order contract required B&W to make installment payments to National Fab [No. 20] on the basis of 90% of the invoice amount for work actually completed and approved by buyer; shipments were made by National Fab to the job site [No. 21] where the material was stored in the field; in September, 1973 [No. 22] National Fab was maintaining that the original contract had been completed and was requesting retainage; it was not until November, 1973 [No. 23] that B&W discovered material discrepancies in the material stored along with many missing and defective pieces; the previous payments made by B&W to National Fab [No. 24] "were made in good faith and without knowledge that the shipments . . . were subject to missing pieces and defective pieces"; B&W did not grossly or materially deviate [No. 27] from its contractual payments with National Fab. Similar and supporting conclusions of law were filed.

■ We accept these findings of the trial court since Surety does not challenge them,

taking the position that the findings are irrelevant.[5]

■ In essence, it is Surety's position that because its principal was successful in overreaching Surety's obligee, this would operate as a release of Surety. We decline to approve this position.[6]

Having reviewed the record under the appropriate standards as noted earlier and being of the opinion that the findings of fact and conclusions of law are supported by testimony, points one and two are overruled. There is no evidence of fraud or bad faith on the part of B&W and the trial court found that the payments were made in good faith. No error is shown. *American Employers' Ins. Co. v. Huddleston,* 123 Tex. 285, 70 S.W.2d 696, 698 (1934).

In point three, Surety contends that the court erred in finding that the contract between B&W and National Fab was not substantially or materially altered because the finding is against the great weight of the evidence. Point four urges the contention that the evidence "shows conclusively as a matter of law" that B&W did substantially and materially alter the contract between B&W and National Fab.

■ In passing upon these points we will concede the rule Surety claims applicable: A material alteration in the amount or nature of the contract bonded will discharge the surety from its bonded obligation. See, e. g., *Straus-Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519, 521 (1941), holding that the case there under review fell "within the general rule that a surety or guarantor is discharged by a material alteration of the contract made without his consent." See also, *Hester v. Ross, Banks, May, Cron & Cavin,* supra (492 S.W.2d at 379).

We do not differ with Surety upon the law applicable to the points under review;

---

5. Surety's brief, p. 19: "Findings of Fact XXII, XXIII, XXIV and XXVI, all to the general effect that B & W paid National Fab in good faith, are wholly and totally irrelevant."

6. The holding in *Van Buren County v. American Surety Co.,* 137 Iowa 490, 115 N.W. 24, 30 (1908), more nearly expresses our view of this position: "If we were to hold that this operates to discharge a bond given to secure the performance of the contract, it is equivalent to saying that the surety may reap advantage by the default of the very party against whose failure he has undertaken to indemnify the obligee. That this may not be done is a fundamental principle in the law of suretyship."

but, we find that the complaints lack a proper factual base in our record. The bond upon which liability is predicated read in part:

> "NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions: * * *"

 Borden was a claimant under the definition contained in the bond,[7] and had a right of action upon the bond. As between the principal and sureties, the latter is discharged from liability because of the violation by the principal of the terms of the bond. But, where the bond is for the benefit of the materialmen and laborers and is conditioned for the payment of claims for labor performed and material furnished, the surety is not discharged under such circumstances. *Williams v. Baldwin,* 228 S.W. 554, 557 (Tex.Comm'n App. 1921, jdgmt. adopted); *New Amsterdam Casualty Co. v. Bettes,* 407 S.W.2d 307, 318 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r. e.). In *72 C.J.S. Principal & Surety § 126, pp. 610, 612–613 (1951),* the rule is stated in this language:

> "Even though there has been a material alteration of the contract between the contractor and the owner, the surety is not discharged as to materialmen for whose benefit the bond is required to be given and who furnished material after such alteration without actual or constructive notice thereof."

One of the authorities cited in support of the text is *Southern Surety Co. v. Nalle & Co.,* 242 S.W. 197, 203 (Tex.Comm'n App. 1922, holding approved), where the court followed *Williams v. Boyd,* supra. Points three and four are overruled.

In its fifth point, Surety complains, without citation of authority, that the trial court erred in finding that Borden did virtually all of the additional work it performed under the bonded contract so that it was entitled to recover such sums from Surety. It presents, at considerable length, its version of the facts and argues that the evidence is insufficient to support the trial court's findings. The short answer to this contention is that the trial court was authorized to weigh the evidence; this court has no such authority.

However, from our consideration of the record, it is apparent that the trial court considered the deposition testimony of Borden's witness LaMar Henry concerning the invoices for work performed under the bonded contract. Henry testified that virtually all of Borden's work was under the first bonded contract because, as he stated, "the changes were very minor, because most of this work was done in the field" after shipment of the grating from Borden's plant. We find no merit in Surety's point five and it is overruled.

Surety, in its eighth and final point of error, asserts that the trial court erred in finding that National Fab owed Borden the amount of its claim and in concluding that Borden was, consequently, entitled to recover that amount from Surety. The argument thereunder shows conclusively that such point is a combination of several of Surety's earlier points which we have already discussed. Point eight is overruled.

The judgment of the trial court is affirmed.

STEPHENSON, J., not participating.

---

7. This is the definition in the bond: "A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, * * *"