**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

**v.**

**DALLAS POWER AND LIGHT COMPANY, Texas Electric Service Company, Southwestern Electric Service Company, Community Public Service Company and Texas Power and Light Company, Appellees.**

**No. 8299.**

Court of Civil Appeals of Texas, Beaumont.

Sept. 6, 1979.

Rehearing Denied Oct. 4, 1979.

R. L. Lattimore, Asst. Atty. Gen., Austin, for appellants.

Sanders W. Shapiro, Austin, for appellees.

DIES, Chief Justice.

This is a suit by the Comptroller of Public Accounts, Treasurer, and Attorney General, of the State of Texas, for additional franchise taxes from various public utility corporations. Trial was to the court without a jury, who ruled for the utility corporations, and from which the Comptroller, et al, ap-

peal. The Comptroller of Public Accounts will be referred to in this opinion as the appellant, and the various utility corporations as the appellees.

In 1962 to stimulate the economy, the Internal Revenue Code allowed an investment credit for corporate plant and equipment purchase. This credit is given in the form of a federal tax reduction equal in amount to a certain percentage of the purchase price of the asset (10 percent in the cases of appellees).

Corporate accounting practitioners developed two methods of dealing with this investment credit. The great majority utilize a "flow through method," which recognizes that a reduction in expense (income tax) "flows through" in retained earnings, and therefore surplus, in the year it is given (the year the equipment is purchased).

Appellees herein, on the other hand, treat this under the "deferral method" wherein the amount is initially treated as a liability and the amount in this account is moved into retained earnings "ratably" over the life of the asset for which the credit was given. This latter method produces less franchise tax.

The Comptroller in computing the franchise tax allows depreciation for the equipment as its use decreases its value. And until 1975 the Comptroller allowed either accounting method in computing the tax due for the tax credit.

In 1975 appellant (Comptroller) established that deferred investment credits are includible in surplus (Ruling .015).[1]

*Tex.Tax.-Gen.Ann. art. 12.01(1)* (Vernon Supp.1978) provides in part:

1. "Ruling .015. Definition. 'Surplus and Undivided Profits' (herein referred to as surplus) is the excess of the net assets (total assets minus total debts) of a corporation over its stated capital . . . ; it includes all surplus accounts carried on the books and records, such as . . . *deferred investment credit.* . . ."

2. *Article 1.02(A)(11)* defines "stated capital" as the sum of: "(a) the par value of all shares of the corporation having a par value that have been issued,

"(a). Basic tax: Four Dollars and Twenty-five Cents ($4.25) per $1,000 or fractional part thereof applied to that portion of the sum of the stated capital, surplus, and undivided profits . . . . ."

This article supplies a definition for "stated capital" as the same as used in *Article 1.02(A)(11)* of *Tex.Bus.Corp.Act.Ann.* (Vernon 1956), but it does not define "surplus."[2] The Texas Business Corporation Act, *Article 1.02(A)(12)* defines "Surplus" as being "the excess of the net assets of a corporation over its stated capital."

Appellees argue that their deferral method of accounting is that required by the Internal Revenue Code and that appellant must therefore accept it. However, the appellant (Comptroller) is not primarily interested in a taxpayer's accounting procedure but its true financial condition as applied to the franchise tax. Here the ten percent tax credit is acquired by appellees immediately when they purchase the equipment. It is money appellees do not have to expend that year and increases or "flows through" to their surplus immediately and not over a period of years, as a depreciating or appreciating item of equipment.

In *United North & South Dev. Co. v. Heath,* 78 S.W.2d 650 (Tex.Civ.App.—Austin 1934, writ ref'd), the court held that an amount which represented the appreciated value of an oil lease owned by the taxpayer constituted surplus for the purposes of the franchise tax. And, *Fulgham v. Gulf, Colorado & Santa Fe Ry. Co.,* 288 S.W.2d 811 (Tex.Civ.App.—Austin 1956, writ ref'd n. r. e.), held that the increased value of the taxpayer's railroad line due to relocation by

"(b) the consideration fixed by the corporation in the manner provided by law for all shares of the corporation without par value that have been issued, except such part of the consideration actually received therefor as may have been allocated to capital surplus in a manner permitted by law, and

"(c) such amounts not included in paragraphs (a) and (b) of this subsection as have been transferred to stated capital of the corporation, whether upon the issue of shares as a share dividend or otherwise, minus all reductions from such sum as have been effected in a manner permitted by law."

the federal government constituted "surplus." *Calvert v. Houston Lighting & Power Co.,* 369 S.W.2d 502 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.), relied upon by appellees is not persuasive here. In that case the court found that an amount carried on the books as "Accumulated Deferred Federal Taxes on Income—Relating to Accelerated Amortization: to be an expense and therefore not properly taxed for franchise purposes as 'surplus.'"

Appellees urge that appellant's allowance of their system of computation from 1962 until 1975[3] became established law and can now only be changed by the legislature, citing *Humble Oil & Ref. Co. v. Calvert,* 414 S.W.2d 172 (Tex.1967). We believe appellees' reliance on this case is misplaced. There, after forty-two years of interpreting "business done in Texas," he changed his test. We do not have such a long standing rule here. In fact, the record shows that most corporations have and do follow the "flow through" system required by appellant's Rule .015. We hold that this Rule is the correct one for determining the franchise tax for the credit herein discussed and reverse the judgment of the trial court, remanding it to that court with instructions to enter judgment for the correct amount due under this ruling.

REVERSED and REMANDED with instructions.

KEITH, Justice, dissenting.

I respectfully dissent.

After receiving much technical evidence relating to accounting and taxation, the trial court filed extensive findings of fact and conclusions of law, all adverse to the contentions of appellant. Without even mentioning the underlying facts found by the trial court, the majority has substituted its own findings for those based on the evidence. This, I submit, is impermissible.

The usual and general rule ordinarily applicable is this: If there is some evidence of a substantial and probative character to support the trial court's findings of fact, they are controlling upon the reviewing court and will not be disturbed, even though the appellate court may have reached a different conclusion. *Commercial Union Assurance Company v. Foster,* 379 S.W.2d 320, 322–323 (Tex.1964); *United States Fidelity & Guar. Co. v. Borden Metal Products Co.,* 539 S.W.2d 170, 172 (Tex.Civ. App.—Beaumont 1976, writ ref'd n. r. e.).

The parties stipulated that the American Institute of Certified Accountants promulgated two opinions regulating the treatment of the investment credit. Opinion No. 2 dated December 1962, concluded in paragraph 13:

"We conclude that the allowable investment credit should be reflected in net income over the productive life of acquired property and not in the year in which it is placed in service."

This is the method used by the utility plaintiffs in this case. It is not the "flow through" method required by the defendant Comptroller.

Opinion No. 4 was issued in March 1964, and in paragraph 10 this conclusion is expressed:

"[W]hile the method of accounting for the investment credit recommended in paragraph 13 of Opinion No. 2 should be considered to be preferable, the alternative method of treating the credit as a reduction of Federal income taxes of the year in which the credit arises is also acceptable."

Thus, "flow through" is, at best, a poor second choice.

All of the expert witnesses for the parties, including professors of accounting, independent certified public accountants, and employees of the Comptroller agreed that the deferral method was not only proper but the preferred method of treatment.[*]

---

**3.** Comptroller admits to allowing utility companies to use this system from 1967–1975.

* This case involves five electric public utility companies. I find no evidence in the record to

support the statement that a majority of corporate accounting practitioners, *in the utility industry,* "utilize a 'flow through method'" of accounting.

Indeed, the Comptroller approved a formal opinion in December 1967, the issue being stated to be:

"The issue presented by the hearing is to determine whether the deferred investment credit is to be treated as an increase in the surplus of the Company in the year in which it is earned or in the years in which it is amortized over the life of the depreciable property acquired."

The Comptroller cited the controlling statute (which is unchanged except as to the rate of taxation) and concluded:

"Consequently, so long as the Taxpayer's method of accounting is generally accepted, is reasonable, reflects the true operation and financial status of the taxpayer and is not prohibited then the Comptroller must give recognition to it. *Taxpayer's system of accounting for the investment credit is generally accepted, it is reasonable, it reflects the true financial status of the Company and it is not prohibited.* Therefore, the Comptroller will not designate, for tax purposes, something to be surplus that is not generally accepted to be surplus nor will the Comptroller, for tax purposes, designate that to be income which is not generally accepted to be income, *without additional legislative authority.*" (emphasis supplied)

This report of the hearings examiner bears the signature of appellant's predecessor and is dated December 8, 1967. The parties stipulate as to its genuineness and the fact that it controlled the subject until "Rule .015" was promulgated effective December 31, 1975.

Several sessions of the Legislature intervened between the date of the ruling quoted above and the promulgation of Rule .015. The Legislature took no action (except to raise the rate of taxation), nor did it change any of the definitions relating to the subject. The truth of the findings quoted above are not challenged by the Comptroller on this appeal.

I, for one, do not comprehend a system of taxation which equates a portion of the cost of an item of machinery as a *profit* during the year in which the machinery is purchased. Between 1967 and 1975 while there was a change in the personnel of the tax collector's office, there was no change in the law which authorized a different treatment of the investment credit.

Being of the opinion that the trial court reached the correct results, I would affirm that judgment; consequently, I dissent from a reversal thereof.