**CENTRAL POWER AND LIGHT COMPANY, Appellant,**

v.

**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellees.**

No. 14175.

Court of Appeals of Texas, Austin.

Dec. 12, 1984.

Rehearing Denied Jan. 9, 1985.

Joe N. Pratt, Kleberg, Dyer, Redford & Weil, Austin, for appellant.

Jim Mattox, Atty. Gen., and David Mendez, Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

This is an appeal by Central Power and Light Company from an adverse judgment of the trial court on its suit for a refund of corporate franchise taxes which it paid to the State of Texas. Trial was to the court without a jury, resulting in a take-nothing judgment. We will affirm the judgment of the trial court.

Appellant argues ten points of error, the thrust of which are that there is either "no evidence" to support the findings of fact and conclusions made by the trial court, or that the same are against the "great weight and preponderance of the evidence." The trial court found, *inter alia*, that the issues here are governed by the holding in *Bullock v. Dallas Power & Light Co.*, 589 S.W.2d 486 (Tex.Civ.App. 1979, writ ref'd n.r.e.), and refused to adopt appellant's requested additional findings and conclusions.

In 1975, the Legislature determined that public utilities are by definition monopolies, and that the normal forces of competition in the free-enterprise society do not apply, and thus utilities are to be regulated. The Public Utility Commission of Texas was created to regulate the rates and operations of these utilities in this State. In determining rates, the commission fixes overall revenues at a level which will permit the utility to recover its operating expenses together with a reasonable return on invested capital. It is within this rate-making procedure that the accounting treatment of the federal investment tax credits must be examined.

■ To stimulate the economy, the Congress of the United States amended the Internal Revenue Code to allow investment credits for corporate investments in capital equipment. This credit against federal income tax allowed appellant and other corporations a tax credit of 10% on its expenditures for new equipment. As stated in *Dallas Power & Light, supra,* corporate accounting practitioners developed two methods of dealing with this investment credit. The great majority utilize a "flow through method" which recognizes that a

reduction in expense (income tax) "flows through" in retained earnings, and therefore surplus in the year it is given, *i.e.,* the year the equipment is purchased. Appellant here, as in *Dallas Power & Light, supra,* treated this under the deferral method wherein the tax credit amount is stated as a liability. Appellant, in attempting to distinguish its method of accounting, asserts that the amount in the account is never moved into retained earnings "ratably" over the life of the asset for which the credit is given.

The appellant here attempts further to distinguish the case at bar from *Dallas Power & Light,* stating that it never takes the deferred credits to "surplus." Appellant argues that this is a debt due to its customer ratepayers, and to be paid to such ratepayers in the form of lower utility rates. This accounting method, of course, reduces the utility's state franchise tax obligation.

■ The Texas franchise tax is a charge made by the State of Texas against a corporation for the privilege of doing business in the state. *Calvert v. Capital Southwest Corporation,* 441 S.W.2d 247 (Tex.Civ.App. 1969, writ ref'd n.r.e.). The franchise tax does not burden any specific asset of a corporation. *Texaco, Inc. v. Calvert,* 526 S.W.2d 630 (Tex.Civ.App.1975, writ ref'd n.r.e.). The tax is imposed on a corporation's "taxable capital" allocated to this state, which is the sum of the corporation's stated capital and surplus, according to the provisions of the Texas Tax Code. Pursuant to his rule-making authority, the State Comptroller has promulgated Franchise Tax Rule 34 T.A.C. 3.405, *Surplus and Undivided Profits* (1975), which provides:

1. Definition. "Surplus and Undivided Profits" (herein referred to as surplus) is the excess of the net assets (total assets minus total debts) of a corporation over its stated capital, as reflected on the corporation's books and records of account maintained in accordance with generally accepted accounting principles; *it includes all surplus accounts carried on*

*the books and record, such as* (but not excluding other surplus accounts not specifically mentioned herein) earned surplus or retained earnings, reduction surplus, realized but unearned income, paid-in capital, appraisal capital from appreciation of assets, *deferred investment credit* and donated capital. Surplus also includes all surplus reserve accounts, or appropriations from retained earnings, which do not reflect actual liabilities of the corporation (such as reserves for plant expansion or reserves for contingencies). (Emphasis added)

The witnesses who testified for appellant explained that the investment tax credits are carried on its books in a deferred tax credit account. The deferred credits are given specific consideration in rate regulatory processes and are "paid ratably over time to appellant's customers" as a result of the treatment required by rate regulation. Appellant argues that Congress, in enacting the federal investment tax credit, required that appellant make an irrevocable election as to the method it would employ in handling the tax credits, or face the prospect of losing them. The election appellant chose was the deferral method. This does not reduce its rate base by the amount of the credit. Instead, it reduces the utility's cost of service to accomplish a ratable repayment of the credit to its ratepayers. The logic appellant follows is that while the credit is being repaid to the customers ratably over the life of the asset (the purchase of which gave rise to the credit), the utility receives earnings from the use of the credit since the rate base is not reduced by the amount of the unamortized credit. Thus, according to appellant's theory, the benefits of the credit are "shared" with the customer who is entitled to be repaid over a period of years and the utility who is entitled to the use of the funds. This theory is analogous to the way the utility creates earnings on assets purchased with other funds, including those generated by the sale of bonds, short-term borrowing and accounts payable.

In 1981, Congress amended the law eliminating the election provisions. Utilities must now ratably flow-through the credit over the service life of the asset. Thus, appellants argue that these credits cannot be taken to be income or part of the surplus of the company. The deferred tax credits according to appellant, is a debt that will have to be repaid to its customers, and cannot be viewed as belonging to the utility's shareholders or as forming a part of the surplus of the company. Finally, appellant urges that the recognition of the true financial condition of the utility and the proper application of the Texas Tax Code require the recognition of the "debt nature" of the deferred investment tax credits by deducting such credits as debt from the assets of the company in arriving at or determining its surplus.

In response to the appellant's arguments, appellee urges that the deferred investment tax credit account maintained by the utility is simply an accounting mechanism for deferring recognition of the credit for rate-making purposes. Its balance at years' end does not represent a debt owed to appellant's customers. It represents the amount of income tax credit the utility has not yet recognized for rate-making purposes. Finally, appellee argues the courts of Texas have already declared that the accounting treatment for the investment tax credit required by the Internal Revenue Code has no effect on a corporation's true financial condition, citing *Bullock v. Dallas Power & Light Co., supra.* We agree, and hold with the trial court that the case of *Dallas Power & Light Co., supra,* is dispositive of the issues in the case at bar.

■ Appellant's points of error of "no evidence" and "sufficiency of the evidence" are based on the alleged lack of competency or expertise of the appellee's expert witness, Dr. Edward Swanson. Dr. Swanson's qualification and expertise were not challenged by appellant. Appellant has not laid the proper predicate for appeal on this point. Although this witness admitted he was not an expert in federal income tax or public utility regulation, he testified as to accounting principles of the Financial Ac-

counting Standards Board as they applied to treatment of investment tax credits. The witness was qualified as an expert in accounting. He graduated from the University of Rhode Island in 1969 with a bachelors degree in accounting. The witness received his masters and his doctoral degrees in accounting from the University of Wisconsin. He is a CPA and has been licensed since 1969. Dr. Swanson has worked for Price, Waterhouse & Company, and has been selected as a faculty "fellow" on the staff of the Financial Accounting Standards Board. Dr. Swanson held teaching positions at several respected universities and presents seminars and courses of instruction in accounting to CPA firms and at universities.

This witness evaluated the facts of appellant's deferred investment tax credit account and its ability currently to use the cash savings in the context of the rate-making formula. He expressed the expert opinion that the credit could not be characterized as a "debt" to customers under recognized accounting principles. Further, the utility's own witness, Mr. Reed Parker, testified that a majority of nonregulated companies use the "flow through method" of accounting for the investment tax credit.

■ Here, the trial judge as the trier of fact may draw reasonable inferences from the evidence, and his findings of fact may not be disregarded by us if the record contains evidence of probative value from which these inferences may be drawn. *Sentry Development Corp. v. Norman,* 553 S.W.2d 664 (Tex.Civ.App.1977, writ ref'd n.r.e.); *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607 (Tex.1979). If there is some evidence of a substantial and probative character to support the trial court's findings of fact, they are controlling upon the reviewing court and will not be disturbed, even though the appellate court may have reached a different conclusion. *Commercial Union Assurance Company v. Foster,* 379 S.W.2d 320 (Tex. 1964); *United States Fidelity & Guaranty Co. v. Borden Metal Products Co.,* 539 S.W.2d 170 (Tex.Civ.App.1976, writ ref'd

n.r.e.). As pointed out by the appellee, Dr. Swanson's and Mr. Parker's testimony was uncontroverted and not objected to by the appellant on the basis of their lack of knowledge of practices of the accounting profession.

The general accounting formula on which every corporation's balance sheet is premised consists of *assets minus debt equals stated capital plus surplus.* (A– D=SC+S). "Taxable capital" can replace SURPLUS + STATED CAPITAL and the formula may be restated: ASSETS – DEBT = TAXABLE CAPITAL.

■ It is clear from the evidence and the findings and conclusions of the trial court that the appellant's deferred investment tax credit is not a debt. Neither the rate-making process nor the accounting entries which the utility has made in connection therewith creates a "debt." Thus, these deferred investment tax credits constitute "surplus" and are taxable under the Texas franchise tax.

■ We will overrule appellant's final point of error that the trial court erred in refusing to adopt appellant's requested additional findings of fact and conclusions of law. Appellant fails to show that it has suffered any injury thereby. *Wagner v. Riske,* 142 Tex. 337, 178 S.W.2d 117 (1944); *Landscape Design & Construction, Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374 (Tex.Civ.App.1980, writ ref'd n.r.e.) These cases hold that a case should not be reversed where most of the requested additional findings were disposed of directly or indirectly by the initial findings, and the failure to make the additional findings was not prejudicial to the appellant. No prejudice is shown by appellant, and the trial court's findings and conclusions properly dispose of the issues in this lawsuit.

The judgment of the trial court is affirmed.