IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 16, 2018

## ANGELA MICHELLE NEWBERRY v. JEREMY MACK NEWBERRY

**Appeal from the Circuit Court for Hamilton County**
**No. 07D262      W. Neil Thomas, III, Judge**

_____

### No. E2017-00340-COA-R3-CV

_____

In this post-divorce case, Angela Michelle Newberry appeals the trial court's modification of the permanent parenting plan. She challenges the trial court's decision to change the designation of primary residential parent from her to her former spouse, Jeremy Mack Newberry. She also attacks the court's decree reducing her co-parenting time. We hold that father failed to meet his burden of establishing a material change in circumstances affecting the children's well-being, as required by Tenn. Code Ann. § 36-6-101(a)(2)(B) (2017). Consequently, we reverse the trial court's judgment and reinstate the parenting plan as originally agreed to by the parties and ordered by the court in the final divorce judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Lucy C. Wright, Chattanooga, Tennessee, for the appellant, Angela Michelle Newberry.

Charles D. Paty, Chattanooga, Tennessee, for the appellee, Jeremy Mack Newberry.

## I.

The trial court entered a final divorce judgment on October 12, 2010. Mother was designated primary residential parent of the parties' three children: Makaila, born March 19, 1998; Mason, born May 29, 2004; and Ava, born March 7, 2006. On July 28, 2011, the trial court approved and entered a modified parenting plan reflecting an agreement reached by the parties in mediation. This plan granted father parenting time every other

week from Friday after school until Tuesday morning, and every other week in the summer. The parties agreed that decision-making regarding education, extracurricular activities, religious upbringing, and non-emergency health care would be made jointly.

In 2011, Mother moved from Apison, Tennessee to Dayton, Tennessee where father was then residing. She testified that she moved in order to be closer to father and other family members. Mother bought a house in Dayton in March of 2012. At the end of October 2012, father, who was then living with his girlfriend Tiffany, moved from Dayton to Ooltewah, about 35 to 45 minutes away. Father and Tiffany married in 2013. They have two children: Abagail, born December 16, 2010, and Cooper, born November 3, 2012.

On April 3, 2014, father filed a petition to modify the parenting plan. As the trial court correctly noted,

> in his petition, father basically asked for a reversal of position with respect to the original Parenting Plan entered in this case. He asked that he be designated primary residential parent and that mother have residential time every other weekend from Friday until Tuesday and two days a week in the alternate weeks.

As grounds, father alleged that mother no longer had the ability to run the household and care for the children, appeared to be unstable and making poor parenting decisions, did not help the children with their homework, and inappropriately allowed Makaila to date an older boy. He later amended his petition to allege that mother was guilty of parental alienation, and that "the father/daughter relationship has been further damaged such that he has always taken Makaila to her soccer games for four years now, and now she doesn't want him to take her." Mother denied the alleged grounds and argued there was no material change of circumstance warranting a change of custody.

The trial court heard the matter on January 15 and May 15, 2015. In its memorandum opinion entered July 14, 2015, the court stated that "[t]hree main issues have evolved during the course of the hearings in this matter: (1) Mason's [health]; (2) sports activities of the children; and (3) the school for the children." The court aptly used the term "evolved," because father did not allege Mason's health or school-related issues as grounds prior to the hearing.[1] Regarding Mason's health, the trial court determined that, "based upon the testimony of Mason's doctor, that issue appears to have resolved." Neither party has challenged that particular ruling on appeal. Similarly, the issue of

---

[1] Mother's counsel correctly pointed out that these issues had not been raised by Father in his amended petition before the hearing.

Makaila dating an older boy had resolved itself because they apparently broke up some four months before the hearing; thus, as the trial court found, "that is not an issue." The trial court granted father's petition to change the schedule and the primary residential designation, stating, in pertinent part, as follows:

> With respect to the education issue, there is no remaining issue as to the oldest child, Makaila, since father has agreed that she may finish her senior year at Rhea County High School and may stay in Dayton to accomplish that result. Consequently, the parenting plan will not be modified as to Makaila. . . .
>
> With respect to the athletic activities of the children, the Court is concerned with respect to the testimony received about mother's support of and conduct at these activities, and it would appear to the Court that she is not only non-supportive but actively alienates herself from father.
>
> With respect to the other two children of the marriage, there is a difference of opinion between sending them to Dayton Elementary or Frazier Elementary schools. Based on the testimony, it would appear that Frazier Elementary, for which the children are qualified, is a better choice, but mother refuses to send them to that school. Father, on the other hand, would prefer to send the children to Silverdale Baptist Academy and has indicated that as long as his income remains no less than $6,500 a month he would be willing to pay the total tuition of Silverdale Baptist Academy. He testified that his parents would assist him in the payment of that tuition. Based on the testimony, it is clear that Silverdale Baptist Academy would be preferable for the education of the two younger children. The testimony shows that the mother has been totally unreceptive to the father with respect to decisions made for the education of the children, and this lack of cooperation has been apparent also in the athletic activities of the children. From that testimony, the Court concludes that mother is not willing to participate in joint decision making for the benefit of the education and athletic activities of the children.

. . . The Court finds that there has been a change of circumstance with respect to the education of the children and the interest and attendance of the parents (particularly the mother) in athletic activities.

The trial court further found that a change of custody from mother to father and modification of the residential parenting schedule was in the best interest of the younger two children, and ordered those changes to be made.

Mother appealed to this Court. We vacated and remanded the case to the trial court, finding

> that the court applied the standard set out in Tenn. Code Ann. § 36–6–101(a)(2)(C), which applies to modification of the residential parenting schedule, not modification of the primary residential parent, which is governed by Tenn. Code Ann. § 36–6–101(a)(2)(B). Thus, we agree with Mother's argument that the trial court applied the wrong legal standard to the facts of this case.

*Newberry v. Newberry*, No. E2015-01801-COA-R3-CV, 2016 WL 2346771, at *4 (Tenn. Ct. App., filed May 2, 2016) (*Newberry I*).

On remand, the trial court heard no further proof. It entered an order reiterating its original findings and conclusions, stating:

> The main issues . . . were the educational needs of two of the three children and their sporting activities.
>
> The findings with respect to those two issues are fairly simple and, based upon the court's evaluation of the witnesses, the outcome of those findings [is] adverse to mother. To start with, at the time of the divorce, there was virtually no history of education or athletic activities to assess, but there was no failure on the part of the mother to communicate and discuss those issues with father. At the time of trial, there was such a failure and further, in that regard, the parenting plan was not working. Most of the findings herein relate to Mason and Av[a], since the parties have agreed that Makaila may remain with her mother in order to graduate with her classmates from

Rhea County High School. Thus, this court is not dividing the family by its decision; the parties have already done that.

Mother's participation in the non-academic activities of Ava and Mason ha[s] not been supportive. She did not attend Ava's graduation from kindergarten or her dance classes and only recently attended gymnastic classes. Although father coached Mason in baseball, mother would bring him late to practice and games. When mother does attend Mason's baseball games, she takes Ava to the visitor's side to watch. Mother is also obstructive with respect to the children talking with their father.

With respect to education, father offered to pay tuition at Silverdale Baptist Academy for Mason and Ava, where the children have been for the past year. When Ava and Mason began, Ava was at or below grade level, but both Ava and Mason are now at or above grade level; Mason is below on one subject. Father's testimony as to the education deficiencies of Dayton City Schools, where mother would enroll the children, basically was unrebutted. Those deficiencies led father to move to Chattanooga to enroll the children at Silverdale Academy. Finally, father has offered to pay the tuition at Silverdale. The prior findings of this court on these issues are applicable as well.

\* \* \*

The court would note that mother's lack of cooperation has not, however, risen to the level of parental alienation.

(Citations to record in original omitted.) Mother again appeals the trial court's decision.

**II.**

Mother raises the issue of whether the trial court erred in changing the primary residential parent and modifying the visitation schedule. Father raises the issues of whether the trial court should have awarded him attorney's fees, and whether he should be awarded his attorney's fees on appeal.

# III.

We set forth the applicable standard of review and governing legal principles in *Newberry I* as follows:

> Our review is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Armbrister v. Armbrister***, 414 S.W.3d 685, 692 (Tenn. 2013); ***Rigsby v. Edmonds***, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012). We review a trial court's conclusions of law de novo, according them no presumption of correctness. ***Armbrister***, 414 S.W.3d at 692; ***Rigsby***, 395 S.W.3d at 734.
>
> A trial court's determinations of whether a material change of circumstances has occurred and where the best interests of children lie are factual issues. ***Armbrister***, 414 S.W.3d at 692–93; ***In re T.C.D.***, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Appellate courts must, therefore, presume a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates to the contrary. ***Armbrister***, 414 S.W.3d at 693. We have noted that trial courts have broad discretion in determining which parent should be the primary residential parent, and appellate courts are reluctant to second-guess a trial court's decision on this issue. *See **Scofield v. Scofield***, M2006–00350–COA–R3–CV, 2007 WL 624351, at *2 (Tenn. Ct. App. Feb. 28, 2007). According to the ***Armbrister*** Court, a trial court abuses its discretion when it:
>
>> appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.
>
> ***Armbrister***, 414 S.W.3d at 693 (quoting ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011)).

Modification of a court's prior order determining which parent should be designated the primary residential parent is governed by statute:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. *A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.*

Tenn. Code Ann. § 36–6–101(a)(2)(B) (emphasis added). A petition to change the primary residential parent of a child requires the court to conduct a two-step analysis: "The threshold question is whether a material change in circumstances has occurred since the entry of the prior [custody] order." **Boyer v. Heimermann**, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). Only if the court finds a material change in circumstances has occurred does it proceed to consider whether changing the primary residential parent is in the children's best interest. **Id**.

Although "there are no bright-line rules" for determining when a material change has occurred, there are a few important factors to consider: "(1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered;[2] and (3) whether a change is one that affects the child's well-being in a meaningful way." **Cranston v. Combs**, 106 S.W.3d 641, 644 (Tenn. 2003); *see also* **Keisling v. Keisling**, 196 S.W.3d 703, 718 (Tenn. Ct. App. 2005) (same); *see generally* **Armbrister**,

---

[2] In light of the Court's holding in **Armbrister**, 414 S.W.3d at 704, this consideration is no longer relevant in cases governed by Tenn. Code Ann. § 36–6–101(a)(2)(C), which concerns modification of a residential parenting schedule.

414 S.W.3d at 701–04 (discussing difference required to prove material change in circumstances for purposes of changing primary residential parent versus modification of parenting schedule); *Boyer*, 238 S.W.3d at 255–257 (discussing evolution of standard for finding material change in circumstances).

*Newberry I*, 2016 WL 2346771, at \*3-\*4 (Brackets and italics in original; footnote 3 in original renumbered).

The burden of proof to demonstrate a material change of circumstances under Tenn. Code Ann. § 36–6–101(a)(2)(B) is on the parent requesting a change in the existing custody arrangement. *McClain v. McClain*, 539 S.W.2d 170, 188 (Tenn. Ct. App. 2017); *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at \*5 (Tenn. Ct. App., filed Dec. 9, 2015). Father presented no evidence at the hearing to support the allegations in his petition that Mother (1) no longer had the ability to run her household and care for the children, (2) appeared to be unstable and made poor parenting decisions, or (3) did not help the children with their homework. Regarding parental alienation, the evidence supports the trial court's finding that "mother's lack of cooperation has not . . . risen to the level of parental alienation." The only evidence in the record supporting a finding of any improper conduct by Mother in this regard is a statement by Sherry Merryman, a friend of father, who testified that she observed mother "making an effort to keep [the children] from talking to their father or to Tiffany" at sporting events. On the other hand, the parties agreed that before father filed his petition, mother had been voluntarily allowing father an extra visitation day per week beyond what was required by the permanent parenting plan. This fact, coupled with mother's testimony that she moved to Dayton to be closer to father and family, suggests that mother generally encouraged – rather than discouraged – the children's relationship with father.

The parties could not agree on what schools the children should attend, however. Father wanted them to attend Frazier Elementary, a school that was close to where he lived when he was in Dayton. Mother enrolled them in Dayton Elementary. Father testified as follows about their disagreements and the reason he moved to Ooltewah:

> She wouldn't let me have any parenting on where to send these kids to school and anything that they had to do. I had no opinion about it. None.
>
> I lived three minutes, maybe not even three minutes from that school [Frazier] and she would not take them there.

Q: And what did you do when you lived three minutes from that school and from [mother], what did you do in October of 2012? What was your solution?

A: I moved.

Q: You moved?

A: I moved for the kids that I have in my house right now. I was not going to let them go to any of those schools. I wanted them to go to better schools that have more opportunities.

Mother testified about the children's academic performance and entered their report cards into evidence. Makaila was a straight-A student. Mason had two As and three Bs. Ava had three As and three Bs. Mason's TCAP scores showed that he was below proficient in two subjects and proficient in two others. Mother put him in tutoring in the summer of 2014 and "he worked really hard on his reading because that was his number one thing that he needed help with the most."

Father wanted to enroll the two younger children in Silverdale Baptist Academy in Chattanooga. He said that it would cost around $16,000 per year in tuition and fees to enroll Mason and Ava there. He admitted that he could not afford to send four children to Silverdale, but stated that his parents would help to pay tuition. His parents did not testify. Father testified that he was offering to pay the cost of Silverdale for Mason and Ava as long as his income did not fall below $6,500 per month. He is self-employed, and he stated that he has some degree of control over his income. The trial court's order recognizes that Father made a conditional agreement to pay the Silverdale tuition, but the order does not require him to do so.

The parties also fought over what extracurricular activities the children would be involved in. Mother signed Ava up for cheerleading without consulting father. Father signed Mason up for baseball in Hamilton County without consulting mother, although the child had been playing in Rhea County before then. Mother signed Mason up to play soccer in Rhea County. Father testified that mother did not attend Makaila's away soccer matches, Ava's kindergarten graduation, or any of her dance classes. He said that she also frequently delivered Mason late to his baseball practices.

Tenn. Code Ann. § 36–6–101(a)(2)(B) provides that "[a] material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan." The trial court in the case at bar held that mother had failed to adhere to the parenting

plan by "not [being] willing to participate in joint decision making for the benefit of the education and athletic activities of the children." Significantly, the parenting plan provides only that major decisions regarding education and extracurricular activities be made jointly. Neither party has violated or failed to adhere to the parenting plan by failing to come to an agreement regarding schools or sporting activities.

Tennessee courts have repeatedly observed that a higher standard applies to demonstrate a material change in circumstances when a parent is seeking a change of custody, as opposed to merely a change in the residential schedule. *Newberry I*, 2016 WL 2346771, at \*4; *Armbrister*, 414 S.W.3d at 703; *Massey-Holt v. Holt*, 255 S.W.3d 603, 608-09 (Tenn. Ct. App. 2007); *Pippin v. Pippin*, 277 S.W.3d 398, 406-07 (Tenn. Ct. App. 2008). In *Pippin*, we observed that

> Existing custody arrangements are favored since children thrive in stable environments. *Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn. 1996); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered res judicata upon the facts in existence or those which were reasonably foreseeable when the decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001).

277 S.W.3d at 404; *see also* *Taylor v Taylor*, No. E2013-01734-COA-R3-CV, 2014 WL 3763727, at \*5 (Tenn. Ct. App., filed July 30, 2014) ("When faced with a request to modify custody, courts generally favor the existing custody arrangement, on the premise that children tend to thrive in a stable environment"); *Ballard v. Cayabas*, No. W2016-01913-COA-R3-CV, 2017 WL 4570414, at \*3 (Tenn. Ct. App., filed Oct. 12, 2017) (stating "there is a strong presumption in favor of continuity of placement of a child") (Internal quotation marks omitted).

As we recently observed in *McClain*,

> There are no bright line rules for determining when a change of circumstances should be deemed material enough to warrant changing an existing custody arrangement. *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Taylor v. Taylor*, 849 S.W.2d [319,] 327 [(Tenn. 1993)]; *Solima v. Solima*, 7 S.W.3d [30,] 32 [(Tenn. Ct. App. 1998)]. These decisions turn on the unique facts of each case. As a general matter, however, the following principles illuminate the inquiry. First, the change of circumstances must involve either the

child's circumstances or a parent's circumstances that affect the child's well-being. ***Kendrick v. Shoemake***, 90 S.W.3d at 570. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. ***Turner v. Turner***, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1989). Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. ***Adelsperger v. Adelsperger***, 970 S.W.2d [482,] 485 [(Tenn. Ct. App. 1997)]. Fourth, the change in circumstances must affect the child's well-being in some material way. ***Kendrick v. Shoemake***, 90 S.W.3d at 570; ***Blair v. Badenhope***, 77 S.W.3d [137,] 150 [(Tenn. 2002)]; ***Hoalcraft v. Smithson***, 19 S.W.3d [822,] 829 [(Tenn. Ct. App. 1999)].

539 S.W.3d at 188 (quoting ***Oliver v. Oliver***, No. M2002-02880-COA-R3-CV, 2004 WL 892536, at *3 (Tenn. Ct. App., filed Apr. 26, 2004)). In the present case, the trial court made no finding that the change in circumstances it found was not reasonably anticipated when the divorce judgment was entered. Neither did the court find that any change in circumstance affected the children's well-being in some material way. "We have consistently held that, before changing the primary residential parent, the petitioner must prove the alleged changes affected the child's well-being in a meaningful way." ***Gentile***, 2015 WL 8482047, at *6.

The trial court's order split up the siblings, designating mother primary custodial parent of Makaila, and father primary custodial parent of Mason and Ava. In ***Maupin v. Maupin***, 420 S.W.3d 761, 775 (Tenn. Ct. App. 2013), we stated:

> Our court has recognized that "[s]eparating siblings is a drastic remedy." ***Shofner v. Shofner***, 181 S.W.3d 703, 717 (Tenn. Ct. App. 2004). Siblings are to be separated only if extraordinary facts in the case require it.

The trial court stated that "this court is not dividing the family by its decision; the parties have already done that." This statement is unsupported by the record. *Father* proposed that the court modify the parenting plan to separate the siblings. Mother fought this proposal "tooth and nail," to the extent of appealing the trial court's decision twice. Makaila, age 17 at the time of the hearing, testified that she thought the current parenting plan worked well and it was her preference to continue it unchanged. Mother testified as follows:

> Q: How do these siblings get along?

-11-

A: They get along great. I mean –

Q: Should they be separated up?

A: Absolutely not.

Q: Because she's still got a good at least year and a half at home?

A: They're very close to Makaila, very close. They literally spend a lot of time with her in her room doing activities. Makaila, she has a mothering nature. She's very good with them. They're very close.

This Court has held on several previous occasions that the parties' disagreement over schools was not a material change in circumstances sufficient to warrant a change in primary custodial parent. *Massey-Holt*, 255 S.W.3d at 610 (reversing trial court's change of custody order where mother moved 35 miles away and enrolled children in new school system over father's objection and educational decisions were to be jointly made); *Garrett v. Garrett*, No. E2012-02168-COA-R3-CV, 2013 WL 1503033, at \*5 (Tenn. Ct. App., filed Apr. 12, 2013) (reversing trial court's change of custody order where mother unilaterally decided to enroll children in a new school district over father's objection and divorce judgment required joint educational decision-making); *Williamson v. Lamm*, No. M2015-02006-COA-R3-CV, 2016 WL 5723953, at \*1, \*3 (Tenn. Ct. App., filed Sept. 30, 2016) (reversing trial court's change of custody order where parties could not agree on which school to enroll the child). In the present case, we likewise hold that the evidence preponderates against the trial court's finding that father demonstrated a material change of circumstances sufficient to change the primary residential parent. Father's desire to enroll the children in a different school, precipitated by his own voluntary decision to move further from mother and the children, does not rise to the level of such a change in circumstances.

Given our holding in this case in mother's favor, we decline father's request to award him attorney's fees at the trial level and on appeal.

## IV.

The judgment of the trial court is reversed. The parenting plan adopted by the trial court in its order entered July 28, 2011, is reinstated. Costs on appeal are assessed to the appellee, Jeremy Mack Newberry.

_____
CHARLES D. SUSANO, JR., JUDGE